Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Christin Cho (Cal. Bar No. 238173)*
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Grace Bennett (Cal Bar No. 345948)*
grace@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066

*Attorneys for Plaintiff*

<br>

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| JAMIE ZUCCARO, individually and on behalf of all others similarly situated, | Case No. 3:23-cv-1242 |
| Plaintiff, | |
| v. | CLASS ACTION COMPLAINT |
| HOT TOPIC, INC., | DEMAND FOR JURY TRIAL |
| Defendant. | |

**<u>Table of Contents</u>**

I.      Introduction. ................................................................................................................1

II.     Parties. .........................................................................................................................4

III.    Jurisdiction and Venue. ...............................................................................................4

IV.     Facts. ............................................................................................................................5

        A.      Defendant's fake prices and fake discounts..................................................5

        B.      Defendant's advertisements violate Oregon law. ........................................19

        C.      Defendant's advertisements harm consumers..............................................21

        D.      Plaintiff was misled by Defendant's misrepresentations. ...........................23

        E.      Defendant breached its contract with and warranties to Ms. Zuccaro and the
                putative class...............................................................................................26

        F.      No adequate remedy at law. ........................................................................28

V.      Class Action Allegations............................................................................................28

VI.     Claims.........................................................................................................................30

        Count I: Violation of the Oregon Unlawful Trade Practices Act:  O.R.S. §§ 646.605,
                et seq..........................................................................................................30

        Count II: Breach of Contract ...................................................................................36

        Count III: Breach of Express Warranty....................................................................37

        Count IV: Unjust Enrichment...................................................................................38

        Count V: Intentional Misrepresentation ..................................................................38

VII.    Prayer for Relief.........................................................................................................39

VIII.   Jury Demand. ..............................................................................................................40

## I.    Introduction.

1.    Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    As the Federal Trade Commission advises in its *Guides Against Deceptive Pricing*, it is deceptive to make up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.

4.    In addition, Oregon's Unlawful Trade Practices Act (UTPA) expressly prohibits businesses from making "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions," O.R.S. § 646.608(j); "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services," O.R.S. § 646.608(s); representing that goods have "characteristics" that they do not have, O.R.S. § 646.608(e); advertising "goods … with intent not to provide the real estate, goods or services as advertised," O.R.S. § 646.608(i); and making "false or misleading statements about a … promotion," O.R.S. § 646.608(p).

5.    The UTPA also prohibits sellers from using misleading price comparisons to advertise their products.  O.R.S. § 646.608(ee).

6.    Defendant Hot Topic, Inc. ("Hot Topic" or "Defendant") makes, sells, and markets clothing and accessories (the "Hot Topic Products" or "Products").  The Products are sold online through Defendant's website, HotTopic.com.

7.    On its website, Defendant lists prices and advertises purported time-limited

discounts from those listed prices.  These include "LIMITED TIME ONLY" sitewide discounts offering "up to X% off sitewide" or "X% off sitewide."  These discounts are made available by using a discount code, such as "20% Off Sitewide - Use Code: HTDEAL," or are automatically applied to the Products sitewide.  Defendant also advertises that its Products have a lower discount price as compared to a higher, list price shown in grey and/or strikethrough font.  Examples are shown on below:





**Kuromi Fortune Teller Tiered Suspender Skirt**

Part of the Kuromi Collection

★★★★½  11 Reviews

$44.90

Or 4 interest-free payments of $12 with    Learn more

20% Off - Use Code: HTDEAL
Not Combinable With Hot Cash

**Kuromi Fortune Teller Tiered Suspender Skirt**

Part of the Kuromi Collection

★★★★½  11 Reviews

$35.92 $44.90

Or 4 interest-free payments of $12 with    Learn more

20% Off



Five Nights At Freddy's Security Guard Woven Button-Up

$44.90 - $48.90 $44.90 - $48.90

20% Off - Use Code: HT20



Funko Five Nights At Freddy's: Security Breach Sun & Moon Plush

$20.90

★★★★★

20% Off - Use Code: HT20



Disney Lilo & Stitch Tonal Icons Throw Blanket Gift Box

$39.90

20% Off - Use Code: HT20



Pokemon Kanto Starters Girls Hoodie

$49.90 - $53.90 $49.90 - $53.90

20% Off - Use Code: HT20

8.      Far from being time-limited, however, Defendant's discounts are *always* available. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular prices (the prices it usually charges), because Defendant's Products are *always* available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all, because customers can *always* buy Defendant's Products at the discount price. Nor are the purported discounts "LIMITED TIME ONLY"—quite the opposite, they are always available.

9.      As described in greater detail below, Ms. Zuccaro bought items from Defendant from its website, HotTopic.com. When Ms. Zuccaro made her purchase, Defendant advertised that

a limited-time sale was going on, and so Defendant represented that the Products Ms. Zuccaro purchased were being offered at a steep discount from their purported regular prices. And based on Defendant's representations, Ms. Zuccaro believed that she was purchasing Products whose regular price and market value were the purported list price that Defendant advertised, that she was receiving a substantial discount, and that the opportunity to get that discount was time-limited. These reasonable beliefs are what caused Ms. Zuccaro to buy from Defendant.

10.      In truth, however, the representations Ms. Zuccaro relied on were not true. The purported list prices were not the true regular prices, the purported discounts were not the true discounts, and the discounts were not time-limited. Had Defendant been truthful, Ms. Zuccaro and other consumers like her would not have purchased the Products, or would have paid less for them.

11.      Ms. Zuccaro brings this case for herself and the other customers who purchased Defendant's Products.

## II.    Parties.

12.      Plaintiff Jamie Zuccaro is domiciled in Sandy, Oregon.

13.      The proposed class includes citizens of every state.

14.      Defendant Hot Topic, Inc. is a California corporation with its principal place of business at 18305 E. San Jose Ave, City of Industry, California 91748.

## III.   Jurisdiction and Venue.

15.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

16.      The Court has personal jurisdiction over Defendant because Defendant sold Hot Topic Products to consumers in Oregon, including to Plaintiff. Defendant does business in Oregon. It advertises and sells its Products in Oregon, and serves a market for its Products in

Oregon.  Due to Defendant's actions, its Products have been marketed and sold to consumers in Oregon, and harmed consumers in Oregon.  Plaintiff's claims arise out of Defendant's contacts with this forum.  Due to Defendant's actions, Plaintiff purchased Defendant's Product in Oregon, and was harmed in Oregon.

17.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Hot Topic Products to consumers in this District, including Plaintiff.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

18.    <u>Divisional Assignment</u>.  This case should be assigned to the Portland division. *See* L.R. 3-2(a)(1).  A substantial part of the events giving rise to the claims occurred in Sandy, Oregon (Clackamas County).

## IV.    Facts.

### A.    Defendant's fake prices and fake discounts.

19.    Defendant makes, sells, and markets clothing and accessories.  Hot Topic sells its Products directly to consumers online, through its website, HotTopic.com.

20.    On its website, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

21.    At any given time, on its website, Defendant advertises steep discounts on its Products.  These discounts always offer purportedly 20% or more off the regular prices Defendant advertises.  Even though in truth these discounts run in perpetuity, Defendant prominently claims that they are "LIMITED TIME."  And it advertises these discounts extensively: on an attention-grabbing banner near the top of its website; in a large banner image on its homepage; on the

products listing pages; on the individual product pages for each Product, and on the checkout pages.
It advertises them by touting "X% off"; by advertising list prices in strikethrough font next to lower,
purported discount prices; with slogans such as "20% Off" in attention-grabbing, red font next to
product descriptions; and by identifying the supposed savings that customers are supposedly
receiving by expressing the savings as a negative number off the supposed full purchase price, in red
font, during checkout.  Example screenshots are provided on the following pages:



Captured January 30, 2021

Captured April 15, 2021



Captured August 18, 2021



Captured December 3, 2021



Captured April 22, 2022



Captured August 2, 2022



Captured December 8, 2022



Captured April 5, 2023



Captured April 30, 2022



Captured February 7, 2023



Captured March 20, 2023



Captured April 19, 2023



Captured February 7, 2023



Captured February 7, 2023



Captured August 16, 2023



Captured August 16, 2023

22.    Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely.  For example, as depicted below, Defendant represents that its sales expire on a particular date ("Today Only") or when the countdown clock expires, for example: "12 Hours: 52 Mins: 11 Secs."  To reasonable consumers, this means that after the countdown clock runs out, Defendant's Products will no longer be on sale and will retail at their purported list prices.  But immediately after each purportedly time-limited sale ends, Defendant generates another similar discount, with a new expiration date.

23.    For example, on April 7, 2022, Defendant advertised a purportedly time-limited sale that was supposed to be a "TODAY ONLY FLASH SALE" and was set to expire shortly (after "12 Hours: 52 Mins: 11 Secs" when the screenshot in question was taken).



Captured April 7, 2022

24.     However, on April 8, 2022, the day that the time-limited sale was supposed to have ended, after the countdown expired, Defendant advertised the same sale with a new expiration date of "TODAY," April 8, 2022.



Captured April 8, 2022

25.     Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts.

26.     For example, on March 20, 2023, Defendant advertised a purported sitewide sale on HotTopic.com.  As part of this discount, Defendant listed purported regular prices in strikethrough font and represented that consumers would get "20% Off" by purchasing during the promotion. For example, Defendant represented that the "Kuromi Fortune Teller Tiered Suspender Skirt" had a regular list price of $44.90, that consumers would get "20%" off of that regular list price by shopping now, and that the discount price was $35.92:



Captured March 20, 2023

27.     But the truth is, the Kuromi Fortune Teller Tiered Suspender Skirt's listed regular price of $44.90 is not its regular price.  Instead, it is always at a discount from the purported regular price of $35.92 (e.g., on March 20, 2023, it was priced at $35.92, and on May 3, 2023, it again was priced at $35.92), and the customer is not receiving the advertised discount by buying during the purported sale.

28.     Occasionally, to obtain the advertised discount, consumers must enter the promo code.  The promo code is prominently located in a prominently displayed banner at the top of the shopping cart.  It is located on a banner on every page of Defendant's website, including on product pages, search pages, and the checkout pages.  And, as described above, the sale is extensively advertised throughout Defendant's websites.  So, the overwhelming majority (if not all) of Defendant's sales are made using the promo code, at the advertised discount price (and not the supposedly regular list price).

29.     Using these tactics, Defendant leads reasonable consumers to believe that they will

get a discount on the Products they are purchasing if they purchase during the limited-time promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y; and they will get a discount. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

30.     Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices are Defendant's regular prices (that is, the prices at which the Products ordinarily or typically retail for), and its former prices (that is, the price at which the goods were actually offered for sale before the limited-time offer went into effect). In other words, reasonable consumers believe that the list prices Defendant advertises represent the amount that consumers usually have to pay for Defendant's goods, formerly had to pay for Defendant's goods, before the limited-time sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers had to pay the list price to get the item and did not have the opportunity to get a discount from that list price.

31.     Reasonable consumers also reasonably believe that the list prices that Defendant advertises represent Defendant's regular prices, and the true market value of the Products, and that they are the prevailing prices for those Products. Reasonable consumers also believe that they are receiving reductions from Defendant's regular prices, former prices, and the market value of the Products in the amounts advertised. Said differently, reasonable consumers reasonably interpret Defendant's advertisements to mean that, if they buy now, they will receive a price reduction from the price at which Defendant ordinarily and typically sells its Products; a price reduction from Defendant's former prices; and a price reduction from the Product's market value. In truth, however, Defendant *always* offers purported reductions off the list prices it advertises. As a result,

everything about Defendant's price and purported discount advertising is false. The list prices

Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices

for the Products Defendant sells, and do not represent the true market value for the Products,

because Defendant's Products are *always* available for less than that, and customers did not have to

formerly pay that amount to get those items. The purported discounts Defendant advertises are not

the true discount the customer is receiving. Nor are the purported discounts "LIMITED TIME

ONLY"—quite the opposite, they are always available.

      **B.**     **Defendant's advertisements violate Oregon law.**

     32.     Oregon's Unlawful Trade Practices Act (UTPA) expressly prohibits businesses from

making "false or misleading representations of fact concerning the reasons for, existence of, or

amounts of price reductions," O.R.S. § 646.608(j); "false or misleading representations of fact

concerning the offering price of, or the person's cost for real estate, goods or services," O.R.S.

§ 646.608(s); representing that goods have "characteristics" that they do not have, O.R.S.

§ 646.608(e); advertising "goods … with intent not to provide the real estate, goods or services as

advertised," O.R.S. § 646.608(i); and making "false or misleading statements about a … promotion,"

O.R.S. § 646.608(p).

     33.     The Federal Trade Commission's regulations prohibit false or misleading "former

price comparisons," for example, making up "an artificial, inflated price … for the purpose of

enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also

prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for

example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being

charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

     34.     Here, as described in detail above, Defendant makes false and misleading

representations of fact about its prices. Defendant makes false or misleading representations of fact

concerning the existence of and amounts of price reductions, including the existence of steep

discounts, and the amounts of price reductions resulting from those discounts.  Defendant also

advertises regular prices that are not its true regular prices, or its former prices.

35.     Defendant also represents that the goods have characteristics that they do not

have—namely, that the values of the Products are greater than they actually are.  Defendant does

this by advertising fake discounts for the Products, as alleged in greater detail above.  Defendant

advertised goods or services with the intent not to sell them as advertised, for example, by

advertising goods having certain former prices and/or market values without the intent to sell goods

having those former prices and/or market values.  Finally, Defendant makes false or misleading

statements about its promotions.  As detailed above, for example, Defendant makes "limited time"

offers that are not, in fact, time-limited.

36.     The UTPA also prohibits sellers from using misleading price comparisons to

advertise their products.  O.R.S. § 646.608(ee) (citing O.R.S. §§ 646.884 and 646.885).  Specifically, it

is illegal for a seller to include a price comparison in an advertisement unless "[t]he seller clearly and

conspicuously identifies in the advertisement the origin of the price that the seller is comparing to

the seller's current price."  O.R.S. § 646.883.  Use of the term "sale" is deemed to identify "the

origin of the price that the seller is comparing to the seller's current price as the seller's own former

price, or in the case of introductory advertisements, the seller's future price."  O.R.S. § 646.884.

And, unless otherwise stated, use of the terms "discount," "_____ percent discount," "$_____

discount," "_____ percent off," and "$_____ off" are "considered to identify the origin of the price

that the seller is comparing to the seller's current price as the seller's former price, or in the case of

introductory advertisements, the seller's future price."  O.R.S. § 646.995.

37.     As alleged in greater detail above, Defendant uses misleading price comparisons.

38.     For example, Defendant uses strikethrough pricing without clearly and

conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price. As shown in the images above, Defendant uses strikethrough sale pricing without any disclosures about where the strikethrough price comes from.

39.    In addition, as alleged in greater detail above, Defendant uses the word "sale," "discount," and "___% Off," in its promotions, even when the Products are not offered at a discount as compared to the seller's former price (or in the case of introductory products, a future price). Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

### C.    Defendant's advertisements harm consumers.

40.    Based on Defendant's advertisements, reasonable consumers expect that Defendant's regular prices (the prices without the advertised discounts) are former prices at which Defendant actually sold its Products before the discounts were introduced for a limited time; that they are the prevailing prices for the Products; and that they represent the true market value of the Products.

41.    Reasonable consumers also expect that, if they purchase during the sale, they will receive (at a discount) Products whose market value is the regular, non-discounted price. For example, for items that are purportedly 20% off, reasonable consumers would expect that they are receiving a 20% discount as compared to the regular price and former price, and that the items have a market value of 20% more than what they are spending.

42.    As explained above, however, Plaintiff and class members' reasonable expectations were not met. Instead of receiving Products with a market value equal to the alleged regular prices, they received items worth less. In addition, instead of receiving a significant discount, Plaintiff and the class received little or no discount. Thus, Defendant's false advertisements harm consumers by depriving them of the reasonable expectations to which they are entitled.

43.    In addition, consumers are more likely to buy a product, and buy more of it, if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

44.    Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[1]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[2]

45.    Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[3]

46.    Thus, Defendant's advertisements harm consumers by inducing them to make purchases they otherwise would not have made, based on false information.  In addition, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products.  As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above.  So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

---

[1] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[2] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[3] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

**D.    Plaintiff was misled by Defendant's misrepresentations.**

47.    Plaintiff was misled by Defendant Hot Topic, Inc.'s representations.

48.    Defendant's website prominently advertises sales.  In particular, as described in further detail above, Defendant advertises purportedly time-limited "sitewide" sales where everything is purportedly 20% or more off for a limited time.[4]  Defendant also advertises purported regular prices, and associated discounts for its Products.  And Defendant advertises that the discounts are available "for a LIMITED TIME ONLY."  Defendant's representations are made prominently at the top of each of the pages on its website, on its Product descriptions, and on its checkout pages.

49.    Defendant's fake sales have persisted since at least August 18, 2021 (and likely for longer than that).  These fake sales persisted when Plaintiff made her purchases.

50.    By advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a limited-time discount if they buy now.  These discounts make consumers substantially more likely to make the purchase, and induces them to make purchases they otherwise would not have made.

51.    What is false or misleading about Defendant's representations is that, based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the prevailing prices at which Defendant actually sells its Products, former prices at which Defendant sold the Products, and the market value of the Products in question.  In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely.  As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products.  Nor are its purported price reductions true price reductions.  Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell

---

[4] Subject to certain exclusions not relevant here.

its Products at the purported regular prices.

52.    On September 5, 2022, Ms. Zuccaro purchased a pair of "The Powerpuff Girls Lavender Velour Girls Lounge Shorts," "The Powerpuff Lavender Velour Girls Cami," and a "Loungefly Disney Kittens Mini Backpack" from Defendant's website, HotTopic.com.  She made this purchase while living in Sandy, Oregon.  On its website and during checkout, Defendant represented that a time-limited ("Last Day Labor Day"), "UP TO 70% OFF" sitewide sale was running and applied to the Products that Ms. Zuccaro purchased:



Captured September 5, 2022

53.    Defendant also represented that the list price of The Powerpuff Girls Lavender Velour Girls Lounge Shorts was $29.90, the list price of The Powerpuff Lavender Velour Girls Cami was $28.90, and the list price of the Loungefly Disney Kittens Mini Backpack was $54.90. Defendant represented that the Products had a certain regular price, and Defendant confirmed this in Ms. Zuccaro's online Order Details:

| Product | | Status | Qty | Price |
|---------|--|--------|-----|-------|
|  | **Order Date:** 9/5/2022<br>**Order #:** DH2094212383<br>**Status:** Shipped<br>**Type:** Web | null<br>9/13/22 13:40<br>PDT **Tracking**<br>9200190307040809361376<br>null | 1 | $29.90 |
|  | **Order Date:** 9/5/2022<br>**Order #:** DH2094212383<br>**Status:** Shipped<br>**Type:** Web | null<br>9/13/22 13:40<br>PDT **Tracking**<br>9200190307040809361376<br>null | 1 | $28.90 |
|  | **Order Date:** 9/5/2022<br>**Order #:** DH2094212383<br>**Status:** Shipped<br>**Type:** Web<br><br>Shipping Surcharge: $2.99 ⊙ | null<br>12/15/22<br>10:14 PST<br>**Tracking**<br>D10013548357258<br>null | 1 | $54.90 |

Presale

54.     Defendant represented that the regular prices of these items totaled $113.70 (not including tax and shipping) but that Ms. Zuccaro would receive a $48.76 discount on her order.

## Order Summary

| | |
|---|---|
| Subtotal | $113.70 |
| Shipping | $0 |
| Shipping Surcharge | $2.99 |
| Discount | -$48.76 |
| Tax | $0.00 |
| **Total** | **$67.93** |

55.     Ms. Zuccaro read and relied on Defendant's representations on Defendant's website, specifically that the Products were being offered at a discount for a limited time and had higher regular and usual prices, and that she would be receiving a price reduction by buying now.  Based on Defendant's representations described and shown above, Ms. Zuccaro reasonably understood that the Products she was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list prices, that these published list prices were the market value of the Products that she was buying; that she was receiving the advertised discount and a price reduction as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion).  She would not have made the purchase if she had known that the Products were not discounted as advertised, and that she was not receiving the advertised discount.

56.     Plaintiff faces an imminent threat of future harm.  Plaintiff would purchase Hot Topic Products from Defendant again in the future if she could feel sure that Defendant's list prices accurately reflected Defendant's regular prices and former prices, and the market value of the Products, and that its discounts were truthful.  But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's list prices, discounts, and sales are not false or deceptive.   For example, while she could watch a sale until the countdown ends to see if the sale is permanent, doing so could result in her missing out on the sale (e.g., if the sale is actually limited in time, and not permanent).  Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase the Products she would like to purchase.

### E.     Defendant breached its contract with and warranties to Ms. Zuccaro and the putative class.

57.     When Ms. Zuccaro and other members of the putative class purchased and paid for the Products they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed at the time that they made the purchase.  The offer was to provide Products

having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

58.    Defendant's website and order details list the market value of the items that Defendant promised to provide.  Defendant agreed to provide a discount equal to the difference between the regular prices listed by Defendant, and the prices paid by Ms. Zuccaro and putative class members.  For example, Defendant offered to provide Ms. Zuccaro The Powerpuff Girls Lavender Velour Girls Lounge Shorts, which have a regular price and market value of $29.90, The Powerpuff Lavender Velour Girls Cami, which has a regular price and market value of $28.90, and the Loungefly Disney Kittens Mini Backpack, which has a regular price and market value of $54.90, and to provide a significant discount from the regular prices of those items.  Defendant also warranted that the regular price and market value of the Products Ms. Zuccaro purchased was the amount it identified as the list price (totaling $113.70 for the three items that Ms. Zuccaro purchased) and warranted that Ms. Zuccaro was receiving a discount of $48.76 on those Products.

59.    The regular price and market value of the items Ms. Zuccaro and the putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract.  They were also affirmations of fact about the Products and a promise relating to the goods.

60.    Ms. Zuccaro and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

61.    Defendant breached its contract by failing to provide Ms. Zuccaro and other members of the putative class with Products that have a regular price and former price and market value equal to the regular list price displayed, and by failing to provide the discounts and price reductions it promised, in the amounts promised.  Defendant also breached warranties for the same reasons.

F.      **No adequate remedy at law.**

62.     Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff also seeks an injunction.  Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.  Legal remedies here are not adequate because they would not stop Defendant from continuing to engage in the deceptive practices described above.  In addition, a legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, to prevail under the UTPA, Plaintiff must show that Defendant engages in the conduct of "trade" and "commerce" under the UTPA.  Plaintiff's remedies at law are also not equally prompt or efficient as their equitable ones.  For example, the need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**V.      Class Action Allegations.**

63.     Plaintiff brings the asserted claims on behalf of the proposed class of:

- _Nationwide Class_: all persons who, within the applicable statute of limitations period, purchased one or more Products advertised at a discount on Defendant's website.

- _Oregon Subclass_: all persons who, while in the state of Oregon and within the applicable statute of limitations period, purchased one or more Products advertised at a discount on Defendant's website.

64.     The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5)

Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity & Ascertainability*

65.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

66.    Class members can be identified through Defendant's sales records and public notice.

### *Predominance of Common Questions*

67.    There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated Oregon's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### *Typicality & Adequacy*

68.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Products advertised at a discount on Defendant's website.  There are no conflicts of interest between Plaintiff and the class.

### *Superiority*

69.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

VI.    **Claims.**

**Count I: Violation of the Oregon Unlawful Trade Practices Act:**
**O.R.S. §§ 646.605, et seq.**
**(By Plaintiff and the Oregon Subclass)**

70.    Plaintiff incorporates each and every factual allegation set forth above.

71.    Plaintiff brings this cause of action on behalf of herself and members of the Oregon Subclass.

72.    Defendant has violated the Oregon Unlawful Trade Practices Act (UTPA).  O.R.S. §§ 646.605, et seq.

73.    The UTPA prohibits unlawful business and trade practices.  O.R.S. § 646.608. Under the UTPA, "[a] person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:"

- "Represents that … goods … have … characteristics … that the … goods … do not have," O.R.S. § 646.608(e);

- "Advertises … goods … with intent not to provide the real estate, goods or services as advertised," O.R.S. § 646.608(i);

- "Makes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions," O.R.S. § 646.608(j);

- "Makes any false or misleading statement about a … promotion used to publicize a product," O.R.S. § 646.608(p);

- "Makes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services," O.R.S. § 646.608(s);

74.    Defendant is a "person," under the UTPA, as defined by O.R.S. § 646.605(4).  The definition of "person" includes "corporations," and as alleged above, Defendant is a corporation.

75.    Defendant engages in the conduct of "trade" and "commerce" under the UTPA.

Defendant does this by advertising, offering, and distributing, by sale, goods in a manner that directly and indirectly affects people of the state of Oregon. O.R.S. § 646.605(8). Defendant advertises and sells clothing and accessories in Oregon, and serves a market for its Products in Oregon. Due to Defendant's actions, its Products have been marketed and sold to consumers in Oregon, and harmed consumers in Oregon, including Plaintiff. Defendant's unlawful methods, acts and practices described above were committed in the course of Defendant's business. O.R.S. § 646.608(1).

76.     The clothing and accessories advertised, offered, and sold Defendant are "goods" that are or may be obtained primarily for personal, family or household as defined by O.R.S. § 646.605(6). Plaintiff and the Oregon Subclass purchased the Products advertised by Defendant for personal, family, or household purposes.

77.     As alleged in greater detail above, Defendant makes "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." O.R.S. § 646.608(j). Defendant does this by advertising fake sales, fake list prices, and fake limited time sales. By advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a limited-time discount if they buy now. In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely. As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products. Nor are its purported price reductions true price reductions. Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices.

78.     As alleged in greater detail above, Defendant also makes "false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services." O.R.S. § 646.608(s). As described above, Defendant's website purports to advertises its

Products with regular list prices, and discounted "sale" prices.  But Defendant's listed prices are not Defendant's true prices, former prices, or prevailing market prices for those Products.  In addition, the purported price reductions are not true price reductions.

79.    As alleged in greater detail above, Defendant also "advertises … goods … with intent not to provide the … goods … as advertised," O.R.S. § 646.608(i).  Defendant advertises Products at a sale price, or discount, as compared to a regular list price.  But the purported discounts that Defendant advertises are not the true discounts that the customer receives.  In many cases, the customer receives no discount at all.

80.    As alleged in greater detail above, Defendant also represents that its goods have characteristics that they do not have.  O.R.S. § 646.608(e).  Defendant represents that the value of its Products is greater than it actually is by advertising fake discounts for the Products.

81.    As alleged in greater detail above, Defendant false and misleading statements about the promotions used to publicize its Products.  O.R.S. § 646.608(p).  As described above, Defendant advertises Products at a sale price, or discount, as compared to the regular prices.  But the purported discounts that Defendant advertises are not the true discounts that the customer receives.  In many cases, the customer receives no discount at all.  In addition, as described above, Defendant advertises limited-time discounts that are not in fact limited in time.

82.    The UTPA also prohibits sellers from using misleading price comparisons to advertise their products.  O.R.S. § 646.608(ee) (citing O.R.S. §§ 646.884 and 646.885).  The UTPA expressly prohibits sellers from including "a price comparison in an advertisement unless" "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price."  O.R.S. § 646.883.  Use of term "sale" is deemed to identify "the origin of the price that the seller is comparing to the seller's current price as the seller's own former price, or in the case of introductory advertisements, the seller's future price."  O.R.S.

§ 646.884.  And, unless otherwise stated, use of the terms "discount," "_____ percent discount," "$_____ discount," "_____ percent off," and "$_____ off" are "considered to identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price, or in the case of introductory advertisements, the seller's future price."  O.R.S. § 646.995.

83.     As alleged in greater detail above, Defendant uses misleading price comparisons. For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price. Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price.

39.     In addition, as alleged in greater detail above, Defendant uses the word "sale," "discount," and "___% Off," in its promotions, even when the Products are not offered at a discount as compared to the seller's former price (or in the case of introductory products, a future price).  Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

84.     Defendant's representations of regular prices, sales, and discounts on its website are "advertisements" as defined by O.R.S. § 646.881(1).  These representations about the prices, sales, and discounts were made in connection with the sales of Defendant's clothing and accessories.

85.     Defendant's use of list prices, sitewide sales, and advertised discounts are "price comparisons" as defined by O.R.S. § 646.881(2).  These statements make a claim that the current price is reduced as compared to a Product's typical or former price.

86.     Defendant's unlawful methods, acts and practices described above were "willful violations" of O.R.S. § 646.608 because Defendant knew or should have known that its conduct was a violation, as defined by O.R.S. § 646.605(10).  For example, Defendant knows that its actions are misleading and deceptive, because it was already sued for the same behavior under California's

consumer protection laws.

87.     Defendant, at all relevant times, had a duty to disclose that the discounts were not real, that the sales persisted and were not limited in time, and that the regular prices were not the true regular prices of the Products.  Defendant had a duty because (1) Defendant had exclusive knowledge of material information that was not known to Plaintiff and the Oregon Subclass; (2) Defendant concealed material information from Plaintiff and the Oregon Subclass; and (3) Defendant made partial representations which were false and misleading absent the omitted information.

88.     Defendant's misrepresentations and nondisclosures deceive and have a tendency to deceive a reasonable consumer and the general public.

89.     Defendant's misrepresentations and nondisclosures are material.  A reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

90.     Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged here, which are unlawful under O.R.S. § 646.608.

91.     As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff and Oregon Subclass members suffered ascertainable losses and injury to business or property.

92.     Plaintiff and Oregon Subclass members would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were false.

93.     Plaintiff and Oregon Subclass members paid more than they otherwise would have paid for the Products they purchased from Defendant.  Defendant's false pricing scheme fraudulently increased demand from consumers.

94.     The Products that Plaintiff and Oregon Subclass members purchased were not, in fact, worth as much as Defendant represented them to be worth.

95.     Plaintiff seeks, on behalf of herself and the Oregon Subclass: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable relief and/or restitution; and (4) attorneys' fees and costs.  O.R.S. § 646.638(3); O.R.S. § 646.638(8).

96.     The unlawful acts and omissions described here are, and continue to be, part of a pattern or generalized course of conduct.  Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction.  Accordingly, Plaintiff seeks an order enjoining Defendant from committing such unlawful practices.  O.R.S. § 646.638(1); O.R.S. § 646.638(8)(c); O.R.S. § 646.636.

97.      The balance of the equities favors the entry of permanent injunctive relief against Defendant.  Plaintiff, the Oregon Subclass members, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant.  Plaintiff, the Oregon Subclass members, and the general public lack an adequate remedy at law.  A permanent injunction against Defendant is in the public's interest.  Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint.  If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff and Oregon consumers through the misconduct alleged.  Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

98.     This action was brought "within one year after the discovery of the unlawful method, act or practice."  O.R.S. § 646.638.

99.     The applicable limitations period is expansive and extends back decades based on the "discovery" rule in the UTPA at O.R.S. § 646.638(6).

100.     Plaintiff and the Oregon Subclass members did not know, and could not have known, that these reference prices and discount representations were false.

101.     Absent class members of the subclass are still not aware, at the time of the filing of

this Complaint, of Defendant's false discount advertising scheme.  By Defendant's design, the false

advertising scheme by its very nature is hidden and difficult for the typical consumer to discover.

Consumers who shop on Defendant's website do not know the true historical prices or sales

histories of the Products that they have viewed and purchased.  They do not know that the

discounts offered are false, or that the false discounting practices extend to all of Defendant's

Products.  Subclass members have not discovered, and could not have reasonably discovered,

Defendant's fake discounting scheme.

102.    Absent class members will learn of the scheme for the very first time upon court-

ordered class notice in this case.

### Count II: Breach of Contract
### (By Plaintiff and the Nationwide Class)

103.    Plaintiff incorporates each and every factual allegation set forth above.

104.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.

In the alternative, Plaintiff brings this cause of action on behalf of herself and the Oregon Subclass.

105.    Plaintiff and class members entered into contracts with when they placed orders to

purchase Products on Defendant's website.

106.    The contracts provided that Plaintiff and class members would pay Defendant for

the Products ordered.

107.    The contracts further required that Defendant provides Plaintiff and class members

with Products that have a former price, and a market value, equal to the regular prices displayed on

the websites.  They also required that Defendant provide Plaintiff and class members with the

specific discount advertised on the website.  These were specific and material terms of the contracts.

108.    Plaintiff and class members paid Defendant for the Products they ordered, and

satisfied all other conditions of their contracts.

109.    Defendant breached the contracts with Plaintiff and class members by failing to

provide Products that had a regular price and market value equal to the list price displayed on its website, and by failing to provide the promised discounts.

110.     As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

111.     Plaintiff provided Defendant with notice of this breach, by mailing a notice letter to Defendant's headquarters, on August 10, 2023.

**Count III: Breach of Express Warranty**
**(By Plaintiff and the Nationwide Class)**

112.     Plaintiff incorporates each and every factual allegation set forth above.

113.     Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the Oregon Subclass.

114.     Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website.  This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

115.     Defendant also issued material, written warranties by representing that the Products were being sold at an advertised discounted price.  This was an affirmation of fact about the Products and a promise relating to the goods.

116.     These warranties were part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

117.     In fact, the Products did not have a market value equal to the purported regular prices.  And the Products were not actually sold at the advertised discounts.  Thus, the warranties were breached.

118.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on August 10, 2023.

119.    Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

## Count IV: Unjust Enrichment
### (By Plaintiff and the Nationwide Class)

120.    Plaintiff incorporates each and every factual allegation set forth in paragraphs 1-56 and 62-69 above.

121.    Plaintiff brings this cause of action in the alternative to her Breach of Contract claim (Count II), on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of herself and the Oregon Subclass.

122.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase the Products and to pay a price premium for these Products.

123.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

124.    (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff are void or voidable.

125.    Plaintiff and the class seek restitution, and in the alternative, rescission.

## Count V: Intentional Misrepresentation
### (By Plaintiff and the Oregon Subclass)

126.    Plaintiff incorporates each and every factual allegation set forth above.

127.    Plaintiff brings this cause of action on behalf of herself and members of the Oregon Subclass.

128.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised on its website.

129.    These representations were false.

130.    When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

131.    Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

132.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

133.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

134.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

**VII.    Prayer for Relief.**

135.    Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, statutory damages, treble damages, and punitive damages where applicable;

- Restitution;

- Rescission;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

## VIII.  Jury Demand.

136.    Plaintiff demands the right to a jury trial on all claims so triable.


Dated: August 25, 2023                          Respectfully submitted,
                                                By: *s/ Jonas Jacobson*

                                                Jonas Jacobson (OSB No. 231106)
                                                jonas@dovel.com
                                                Christin Cho (Cal. Bar No. 238173)*
                                                christin@dovel.com
                                                Simon Franzini (Cal. Bar No. 287631)*
                                                simon@dovel.com
                                                Grace Bennett (Cal Bar No. 345948)*
                                                grace@dovel.com
                                                Dovel & Luner, LLP
                                                201 Santa Monica Blvd., Suite 600
                                                Santa Monica, CA 90401
                                                Tel: (310) 656-7066

                                                *Attorneys for Plaintiff*

                                                * Pro Hac Vice application forthcoming