Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Grace Bennett (Cal Bar No. 345948)*
grace@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066

*Attorneys for Plaintiffs*

* Admitted *pro hac vice*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JAMIE ZUCCARO, CATHERINE MOODY, and ANDREW COHN, each individually and on behalf of all others similarly situated, | Case No. 3:23-cv-01242-MO |
| Plaintiffs, | **Plaintiffs' Unopposed Motion for Conditional Class Certification and Preliminary Approval of Class Action Settlement** |
| v. | |
| HOT TOPIC, INC., | |
| Defendant. | |

## Table of Contents

I.      Introduction. ..................................................................................................................5

II.     Factual background. .......................................................................................................1

        A.      Plaintiffs' allegations. ...................................................................................1

        B.      Litigation, settlement negotiations and mediation. ......................................2

        C.      The Settlement. .............................................................................................4

                1.      Class definition. .................................................................................4

                2.      Benefits to Settlement Class Members. .............................................4

                3.      Release of claims. ..............................................................................6

                4.      Attorneys' fees and expenses and incentive awards. .........................7

                5.      Settlement notice and administration. ...............................................7

III.    The Settlement should be preliminarily approved ........................................................7

        A.      The proposed Settlement is fundamentally fair, reasonable, and adequate. ......................9

                1.      Rule 23(e)(2)(A): The proposed Class Representatives and Class Counsel
                        have adequately represented the Class. ...........................................10

                2.      Rule 23(e)(2)(B): The Settlement is the product of serious, informed, and
                        non-collusive negotiations. ..............................................................11

                3.      Rule 23(e)(2)(C): The Settlement provides excellent relief. ..................14

                4.      Rule 23(e)(2)(D): The Settlement treats Class Members equitably relative
                        to each other. ...................................................................................20

        B.      The Settlement Class satisfies the requirements of Rule 23(a) and (b), and so
                may be conditionally certified. ...................................................................21

                1.      Rule 23(a)(1): The Settlement Class is sufficiently numerous. ..............22

                2.      Rule 23(a)(2): There are questions of law and fact common to the
                        Settlement Class. .............................................................................22

                3.      Rule 23(a)(3): Plaintiffs' claims are typical to those of the Settlement
                        Class. ................................................................................................23

                4.      Rule 23(a)(4): Plaintiffs and proposed Class Counsel have fairly and
                        adequately represented the Settlement Class's interests. .......................24

                5.      Rule 23(b)(3): Common questions predominate, and a class action is
                        superior to other available methods of adjudication. .............................24

        C.      The Court should approve the proposed notice plan. ...................................26

IV.     Conclusion. ..................................................................................................................28

## Table of Authorities

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.,*
731 F.3d 952 (9th Cir. 2013) ...................................................................................... 21

*Adams v. Haan,*
2020 U.S. Dist. LEXIS 176002 (C.D. Cal. 2020) ..................................................... 18

*Ahmed v. HSBC Bank USA,*
2019 U.S. Dist. LEXIS 104401 (C.D. Cal. 2019) ..................................................... 20

*All Consumer & Reseller Actions (In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.),*
2016 U.S. Dist. LEXIS 99071 (N.D. Cal. 2016) ....................................................... 11

*Allen v. Bedolla,*
787 F.3d 1218 (9th Cir. 2015) .................................................................................... 13

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) .............................................................................................. 21, 26

*Anderson v. Davis Wright Tremaine Ltd. Liab. P'ship,*
2023 U.S. Dist. LEXIS 166884 (D. Or. 2023) .......................................................... 26

*Barr v. SelectBlinds LLC,*
2024 U.S. Dist. LEXIS 39068 (C.D. Cal. 2024) ................................................... 17, 19

*Bayat v. Bank of the West,*
2015 U.S. Dist. LEXIS 50416 (N.D. Cal. 2015) ....................................................... 14

*Bell v. Redfin Corp.,*
2023 U.S. Dist. LEXIS 211383 (S.D. Cal. 2023) ......................................................... 6

*Briseño v. Henderson,*
998 F.3d 1014 (9th Cir. 2021) .................................................................................... 12

*Chester v. TJX Cos.,*
2017 U.S. Dist. LEXIS 201121 (C.D. Cal. 2017) ................................................. 16, 22

*Chowning v. Kohl's Dep't Stores, Inc.,*
2016 U.S. Dist. LEXIS 188341 (C.D. Cal. 2016) ..................................................... 18

*Chowning v. Kohl's Dep't Stores, Inc.,*
2016 U.S. Dist. LEXIS 37261 (C.D. Cal. 2016) ....................................................... 18

*Ciuffitelli v. Deloitte & Touche Lp,*
2019 U.S. Dist. LEXIS 61386 (D. Or. 2019) ............................................................ 11

*Cody v. SoulCycle Inc.,*
2017 U.S. Dist. LEXIS 163965 (C.D. Cal. 2017) ..................................................... 17

*Davies v. PeaceHealth,*
2023 U.S. Dist. LEXIS 122310 (D. Or. 2023) ................................................ 12, 21, 24

*Dubeau v. Sterling Sav. Bank,*
2013 U.S. Dist. LEXIS 123337 (D. Or. 2013) .......................................................... 20

*Foos v. Ann, Inc.*,
  2013 U.S. Dist. LEXIS 136918 (S.D. Cal. 2013) ................................................................ 17

*Garcia v. Harborstone Credit Union*,
  2023 U.S. Dist. LEXIS 114412 (W.D. Wash. 2023) ......................................................... 9, 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................................ 22, 24

*Hart v. BHH, LLC*,
  2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. 2020) ................................................................ 6

*Hendricks v. Ference*,
  754 F. App'x 510 (9th Cir. 2018) ...................................................................................... 17

*Hendricks v. StarKist Co.*,
  2016 U.S. Dist. LEXIS 134872 (N.D. Cal. 2016) .............................................................. 17

*In re Hyundai and Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ............................................................................................. 8

*In re Omnivision Technologies, Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................................ 19

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ................................................................................. 13, 19, 20

*In re Portland GE Sec. Litig.*,
  2022 U.S. Dist. LEXIS 51404 (D. Or. 2022) ................................................................... 19

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  2019 U.S. Dist. LEXIS 127093 (D. Or. 2019) ........................................................... 8, 9, 23

*In re Wireless Facilities, Inc.*,
  253 F.R.D. 607 (S.D. Cal. 2008) ...................................................................................... 21

*Jacobo v. Ross Stores, Inc.*,
  2018 U.S. Dist. LEXIS 248252 (C.D. Cal. 2018) ........................................................ 16, 25

*Junkersfeld v. Med. Staffing Sols., Inc.*,
  2022 U.S. Dist. LEXIS 114007 (E.D. Cal. 2022) ............................................................ 10

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ......................................................................................... 25

*Kimbo v. MXD Grp., Inc.*,
  2021 U.S. Dist. LEXIS 25825 (E.D. Cal. 2021) .............................................................. 24

*Larsen v. Trader Joe's Co.*,
  2014 U.S. Dist. LEXIS 95538 (N.D. Cal. 2014) .............................................................. 18

*Moody v. Hot Topic, Inc.*,
  2023 U.S. Dist. LEXIS 205910 (C.D. Cal. 2023) .............................................................. 3

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.*,
  2021 U.S. Dist. LEXIS 87268 (N.D. Cal. May 5, 2021) .................................................. 18

*Perks v. ActiveHours, Inc.*,
   2021 U.S. Dist. LEXIS 57272 (N.D. Cal. 2021) ..................................................12, 20

*Rael v. Children's Place, Inc.*,
   2020 U.S. Dist. LEXIS 13970 (S.D. Cal. 2020) ......................................10, 18, 23, 25

*Randall v. Integrated Commc'n Serv.*,
   2023 U.S. Dist. LEXIS 157658 (W.D. Wash. 2023) ..............................................14

*Russell v. Ray Klein, Inc.*,
   2022 U.S. Dist. LEXIS 92881 (D. Or. 2022) ..........................................9, 13, 22, 25

*Spann v. J.C. Penney Corp.*,
   307 F.R.D. 508 (C.D. Cal. 2015) .........................................................................22

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ...................................................................16, 25

*Sperling v. Stein Mart, Inc.*,
   291 F. Supp. 3d 1076 (C.D. Cal. 2018) ...............................................................18

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ............................................................................24

*Steinberg v. Corelogic Credco, LLC*,
   2023 U.S. Dist. LEXIS 177325 (S.D. Cal. 2023) .................................................20

*Tchoboian v. FedEx Office & Print Servs., Inc.*,
   2014 U.S. Dist. LEXIS 184376 (C.D. Cal. 2014).................................................17

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010).............................................................................22

*Xiufang Situ v. Leavitt*,
   240 F.R.D. 551 (N.D. Cal. 2007) ........................................................................22

**Rules**

Fed. R. Civ. P. 23(a)(1) .............................................................................................21

Fed. R. Civ. P. 23(a)(2) .............................................................................................21

Fed. R. Civ. P. 23(a)(3) .............................................................................................22

Fed. R. Civ. P. 23(a)(4) .............................................................................................23

Fed. R. Civ. P. 23(b)(3)........................................................................................24, 25

Fed. R. Civ. P. 23(c)(2)(B)........................................................................................26

Fed. R. Civ. P. 23(e)(2)...........................................................................................9, 14

Fed. R. Civ. P. 23(e)(2)(B)........................................................................................11

Fed. R. Civ. P. 23(e)(2)(D)........................................................................................20

## Certification of Compliance with Local Rule 7-1

Pursuant to Local Rule 7-1, Plaintiffs' counsel has conferred in good faith with Defendant's counsel before submitting this motion. Defendant, Hot Topic, Inc., supports preliminary approval and conditional class certification (for settlement purposes only) and has reviewed the Motion, but, as explained below, reserves its right to contest any specific representations made by Plaintiffs within the below Memorandum.

## Motion for Conditional Class Certification and Preliminary Approval of Class Action Settlement

Pursuant to Federal Rule of Civil Procedure 23(e) and other applicable law, Plaintiffs Jamie Zuccaro, Catherine Moody, and Andrew Cohn hereby move this Court for entry of an order:

1. Granting preliminary approval of the proposed class action settlement set forth in the Settlement Agreement, attached as Exhibit 1;

2. Preliminarily certifying, for settlement purposes only, a settlement class in this matter;

3. Preliminarily appointing Plaintiffs Jamie Zuccaro, Catherine Moody, and Andrew Cohn as class representatives for settlement purposes;

4. Preliminarily appointing Dovel & Luner LLP as Class Counsel;

5. Preliminarily finding that the terms of the Settlement are fair, reasonable, and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure;

6. Approving that the proposed Notice Plan complies with the requirements of Rule 23 and due process, and that the Notice is to be sent to the Settlement Class Members as set forth in the Agreement and pursuant to the deadlines in the Agreement.

This Motion is based on the Memorandum in Support of the Motion provided below, as well as the Declarations of Simon Franzini, Jamie Zuccaro, Catherine Moody, Andrew Cohn, and

Patrick Passarella (on behalf of Kroll Settlement Administration LLC), filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter.

**Memorandum in Support of Plaintiffs' Unopposed Motion for Conditional Class
Certification and Preliminary Approval of Class Action Settlement**

## I.    Introduction.

Plaintiffs Jamie Zuccaro, Catherine Moody, and Andrew Cohn, and Defendant Hot Topic,
Inc., have reached a hard-fought class-wide settlement. The Settlement will provide at least
approximately $12.5 million in relief to the Settlement Class—at least approximately $10 million of
which will be used to provide direct relief to Class Members. The Settlement is an excellent outcome
for the Settlement Class and meets all the criteria for preliminary approval under Rule 23(e)(1) and
Ninth Circuit precedent. Accordingly, the Court should preliminarily approve the Settlement,
approve the form and manner of notice, preliminarily certify the Settlement Class, appoint Plaintiffs
as Class Representatives and Plaintiffs' counsel as Class Counsel, and schedule a Final Fairness
Hearing.[1]

## II.    Factual background.

### A.    Plaintiffs' allegations.

Defendant sells clothing and accessories through its website, Hottopic.com. Dkt. 23,
Consolidated Class Action Complaint ("Complaint"), ¶9. Plaintiffs each made purchases on
Defendant's website. *Id.* ¶¶12, 55-81 (describing the purchases). Plaintiffs allege that when they
made their purchases, Defendant's website was advertising limited-time, percent-off discounts. *Id.*
¶¶60, 65-76, 78-81, 87. Plaintiffs allege that they, like other reasonable consumers, understood

---

[1] The arguments contained in this brief are made for settlement purposes only. Defendant
has informed Plaintiffs that although Defendant supports preliminary approval and has reviewed
this brief and its supporting declarations as to form, it reserves its right to contest any
representations made by Plaintiffs herein as it relates to the merits of the lawsuit, Plaintiffs' factual
allegations or description of the procedural history, the propriety of class certification, the propriety
of any fee awards, characterizations of the litigation to date, any assessments or projections of the
strengths or weakness of any contention before this Court or on appeal, and any calculation of
settlement amounts.

Defendant's advertising to mean that they were receiving a discount off of Defendant's regular prices. *Id.* ¶88. But, Plaintiffs allege, "Defendant's discounts are *always* available," and, as a result, the "list prices Defendant advertises are not actually Defendant's regular prices," the "purported discounts Defendant advertises are not the true discount the customer is receiving," and the discounts are not actually limited in time. *Id.* ¶11; *see id.* ¶59 ("Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices."). So, Plaintiffs allege, Defendant's advertised discounts were not real discounts and were instead false and misleading. *Id.* ¶11, 13.

Plaintiffs allege that they were injured by Defendant's false representations because they "would not have purchased the Products, or would have paid less for them" if they had known that the products were not on sale, and that they were not receiving the promised discounts. *Id.* ¶13. And they allege that other consumers were injured in the same way. *Id.*

Based on these allegations, Plaintiffs filed class actions—in their home states of Oregon and California respectively—asserting claims for violations of Oregon and California consumer protection statutes, respectively, as well as common law claims. *See* Dkt. 1 (initial Complaint); *Catherine Moody, et al. v. Hot Topic, Inc.*, Case No. 5:23-cv-00447-JGB-SP (C.D. Cal.).

**B.    Litigation, settlement negotiations and mediation.**

Ms. Moody originally filed her case in the United States District Court for the Central District of California on March 15, 2023. Exhibit 1, Settlement Agreement ("Agreement") §II(A). Mr. Cohn joined that case, and he and Ms. Moody filed the First Amended Complaint on April 5, 2023. Franzini Decl. ¶10. Ms. Zuccaro filed her case in this Court on August 25, 2023. *Id.*

The Parties litigated the California case for months. On July 7, 2023, Defendant filed a comprehensive Motion to Dismiss the entirety of the case, challenging each of Plaintiffs' claims on a variety of grounds. Agreement §II(C). Defendant simultaneously filed a Motion for Judicial Notice

asking the court to take notice of multiple documents that it argued were relevant to the Motion to Dismiss. *Id.* These Motions were accompanied by detailed declarations from Defendant's counsel and a marketing manager. *Id.*; Franzini Decl. ¶11. The Parties extensively briefed the issues, and on November 15, 2023, the court issued an order granting Defendant's Motion to Dismiss and providing Plaintiffs with leave to amend their Complaint. Agreement §II(C); *Moody v. Hot Topic, Inc.,* 2023 U.S. Dist. LEXIS 205910 (C.D. Cal. 2023). Plaintiffs filed a detailed Second Amended Complaint on December 11, 2023. *Id.*

After briefing Defendant's motions, the Parties began discussing the possibility of settling both the California and Oregon cases. The negotiations—which took place over many months and included multiple mediation sessions—were arduous, contentious, and well-informed. Franzini Decl. ¶12. After agreeing to mediate, the Parties exchanged significant informal discovery, including detailed financial and sales records. Agreement §II(D). Plaintiffs' counsel performed an extensive analysis of these sales records, which were voluminous, and used them to put together several damages models that it shared with Defendant. *Id.* Counsel also collected numerous archived copies of Defendant's website showing Defendant's price advertising over time, and worked with a consultant with extensive experience in consumer class actions—Bruce Silverman—to prepare a liability analysis, as well as an expert report for mediation purposes, which was also provided to Defendant. *Id.*; Franzini Decl. ¶12. The Parties also prepared and exchanged comprehensive mediation briefs that discussed the claims, defenses, and alleged damages in detail. Agreement §II(D).

The Parties participated in an in-person mediation in Los Angeles, California on January 10, 2024, with retired judge and JAMS mediator, the Honorable Charles "Tim" McCoy. *Id.* §II(E). Judge McCoy is a former Presiding Judge of the Los Angeles County Superior Court and a founder and Supervising Judge of the Complex Litigation Courts in Los Angeles. The Parties did not reach an

agreement at the mediation, but continued to engage in extensive and contentious negotiations over the following four weeks. *Id.* The Parties then scheduled and attended a second mediation session with Judge McCoy on February 8, 2024. *Id.* The Parties reached an agreement in principle during that session and then began to negotiate a term sheet, which was finalized on February 16, 2024. *Id.* The Parties then began negotiating a long-form agreement. Negotiation of the long-form agreement was unusually lengthy and involved, required numerous back-and-forth redline drafts of both the agreement and the accompanying class notices and numerous conversations between counsel, and ultimately took almost six months to complete. Franzini Decl. ¶15. The long-form was executed on July 12, 2024. *Id.* The Settlement Agreement is attached to this Motion as Exhibit 1.

> **C.    The Settlement.**

> > **1.    Class definition.**

The Settlement defines the Settlement Class as follows:

- All persons who, while a resident of the state of California, purchased one or more products on the Hot Topic Website from March 15, 2019, to Preliminary Approval ("California Settlement Subclass"); and

- All persons who, while a resident of the state of Oregon, purchased one or more products on the Hot Topic Website from August 25, 2022, to Preliminary Approval ("Oregon Settlement Subclass").

Agreement §I(II).

> > **2.    Benefits to Settlement Class Members.**

The Settlement provides for at least approximately $10 million in direct benefits to Class Members, and a total of at least approximately $12.5 million in value when settlement administration costs, attorneys' fees and costs, and incentive awards are included.

Under the Settlement, Defendant is required to provide every Class Member with $10 in compensation. Agreement §III(C)(1). As of the date the Settlement Agreement was finalized, there were approximately 1,030,735 Settlement Class Members, meaning that the Settlement will provide at least approximately $10 million in compensation to Settlement Class Members.[2] *Id.* This compensation will be provided in one of two ways. *Id.* §III(C)(3-4). Class Members who submit a claim form indicating that they made purchases subject to a percentage-off sitewide discount will receive the compensation they are owed in cash. *Id.* §III(C)(3); *id.* Exhibit D (Claim Form). All other Class Members—even those who do nothing and do not submit a claim form—will automatically receive their compensation in useful and flexible store credit that can be used to purchase anything on Defendant's website, is fully transferable and stackable with any other promotion, and never expires. *Id.* §III(C)(4).

To receive their compensation in cash, Class Members need only fill out and submit a simple claim form, either on the Settlement Website or by mail, including a proof of purchase showing they made a purchase subject to a purported sitewide discount. Agreement §§III(C)(3); IV(D). Proof of purchase can be a simple screenshot or PDF of a confirmation email or account page showing the purchase. *Id.* §I(EE). The claim form allows Class Members to choose to receive their cash payment through an online service like PayPal, via a pre-paid Mastercard, or in the form of a physical check delivered by the Settlement Administrator. *Id.* Exhibit C (claim form showing these payment options). And there is no penalty for choosing to receive payment in cash rather than credit—in either case, Class Members will receive a $10 benefit. Agreement §III(C)(3-4).

Settlement Class Members who do not file a claim will automatically receive a $10 store credit. *Id.* §III(C)(4). The credits can be used towards any purchase on Hottopic.com without any restrictions

---

[2] Because the Settlement Class will continue to grow until Preliminary Approval is granted, the total amount of direct relief to Class Members will also grow. *See* §I(II) (explaining that the Class Period ends on the date Preliminary Approval is granted).

or black-out dates. *Id.* §III(C)(5). They never expire, meaning Class Members do not have to rush to use them. *Id.* They can be combined with any other discounts or offers. *Id.* They can be freely transferred between consumers. *Id.* And, if a credit's value exceeds the total amount of a Class Member's order, any unused credit will remain usable and can be applied toward future purchases. *Id.* Defendant sells a wide variety of commonly used and purchased items (including, as discussed below, clothing, home décor, accessories, kitchen products, and toys), and sells thousands of products for less than $10. Franzini Decl. ¶23. Thus, Class Members can use their credit to purchase a large range of products without spending any of their own money. *Id.*; *see* §III(A)(3) below (providing more detail on the credit vouchers). In short, the credits' features afford Class Members maximum flexibility to use their credits when and how they want, without spending any more of their own money.

In addition to the direct benefits provided under the Settlement, Defendant is also required to pay for notice and administration costs, incentive awards to the named Plaintiffs as approved by the Court, and any award of attorneys' fees, costs, and expenses to proposed Class Counsel as approved by the Court and pursuant to the terms of the Settlement Agreement. Agreement §§III(E)(3), III(F)(1), IV(B). Payment of these expenses does not reduce the direct compensation Class Members will receive in any way, meaning that all of these benefits are on top of the 10-dollar-per-Class Member compensation described above. And when these additional costs are factored in, the total value of the benefits created by the Settlement is at least approximately $12.5 million. Franzini Decl. ¶18; *see Bell v. Redfin Corp.*, 2023 U.S. Dist. LEXIS 211383, at *14 (S.D. Cal. 2023) (notice and administration costs "were reasonably incurred for the benefit of the Class" and so should be included in the total value of the Settlement); *Hart v. BHH, LLC*, 2020 U.S. Dist. LEXIS 173634, at *21 (S.D.N.Y. 2020) ("The class benefits from having counsel represent them. Therefore, even if indirectly, attorneys' fees paid directly by the defendant are a benefit to the class.").

### 3.    Release of claims.

The Settlement Agreement calls for a release of only those claims related to Defendant's marketing or sales, Class Members' purchases, and the claims alleged in, or that arise from the facts alleged in, the operative Complaints in the two Actions. Agreement §III(D)(1). Under the Agreement, Settlement Class Members retain their rights against Defendant to bring any claims against Defendant outside of this release.

### 4.    Attorneys' fees and expenses and incentive awards.

The Settlement permits proposed Class Counsel to apply to the Court for its reasonable attorneys' fees and costs in an amount not to exceed $2 million. Agreement §III(E)(1). This amounts to approximately 16% of the total estimated value of the benefits that the Settlement affords Class Members. As discussed below, this is substantially lower than the Ninth Circuit's 25% benchmark routinely awarded to class counsel in this District and Circuit. *See* §III(A)(3) below. And, because the Settlement provides for attorneys' fees to be paid on top of the compensation to the Class, the attorneys' fees will not reduce the amount of the benefits provided to Class Members.

The Settlement also permits each proposed Class Representative to apply for an incentive award not to exceed $2,500. Agreement §III(F)(1). As discussed below, this is at the lower end of what is customarily awarded to Class Representatives in this District and the Ninth Circuit, and these modest awards are justified given the Plaintiffs' diligent service to the Settlement Class. *See* §III(A)(4) below. And again, because the Settlement provides for these incentive awards to be paid on top of the compensation to the Class, the incentive awards will not reduce the amount of the benefits provided to Class Members.

Proposed Class Counsel and Plaintiffs will apply for fees, costs, and incentive awards in a separate motion.

### 5.    Settlement notice and administration.

The Settlement provides that "[a]ll notice and claims administration activities shall be carried out exclusively" by a Settlement Administrator selected by the Parties and appointed by the Court. Agreement §IV(A). The Parties selected, and request that the Court appoint, Kroll Settlement Administration LLC ("Kroll") as Settlement Administrator. Franzini Decl. ¶26. The Parties made this selection after soliciting bids from multiple well-regarded settlement administration companies. *Id.* Kroll anticipates that administration will cost between $120,000-$207,000. Passarella Decl. ¶19.

To effectuate notice, Defendant will provide the Settlement Administrator with a class list consisting of: (1) Class Members' names; (2) Class Members' most recent email addresses associated with a purchase on Hottopic.com; and (3) the shipping address associated with each Settlement Class Member's most recent purchase to an Oregon or California address. Agreement §IV(C)(1). Using this information, the Settlement Administrator will provide direct notice to all Settlement Class Members by email. Passarella Decl. ¶¶ 6-9; Agreement §IV(C)(3-4). Because Defendant has an email address associated with each order, the Parties anticipate that the overwhelming majority of Settlement Class Members will receive email notice. Still, if email notice to any Class Member is returned as undeliverable, the Settlement Administrator will provide notice by First-Class U.S. mail to the extent mailing information is available. Agreement §IV(C)(4); Passarella Decl. ¶¶ 10-14.

The Settlement Administrator will also create a Settlement Website. The Website will allow Class Members to submit claims for cash relief (and proof of purchase) online and will include detailed information concerning the Settlement, including information on how to opt out of or object to the Settlement. Agreement §IV(C)(5); Passarella Decl. ¶16.

### III.    The Settlement should be preliminarily approved.

The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). Under FRCP 23(e), approving a class action settlement "involves a two-

step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 127093, at *3-4 (D. Or. 2019). For a court to preliminarily approve a class settlement and direct that notice be sent to class members, the court must evaluate whether the settlement is "fair, reasonable, and adequate," and determine whether the proposed settlement class can be conditionally certified. *See Russell v. Ray Klein, Inc.*, 2022 U.S. Dist. LEXIS 92881, at *4 (D. Or. 2022).

Here, as detailed below, both requirements are met. Accordingly, the Court should preliminarily approve the Settlement.

## A.    The proposed Settlement is fundamentally fair, reasonable, and adequate.

Rule 23(e)(2) requires the court to evaluate whether the Parties' settlement proposal is "fair, reasonable, and adequate" after considering four factors. Those factors are "whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; … (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

To be preliminarily approved under Rule 23(e)(2), "the proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class." *Garcia v. Harborstone Credit Union*, 2023 U.S. Dist. LEXIS 114412, at *13 (W.D. Wash. 2023); *see In re Premera*, 2019 U.S. Dist. LEXIS 127093, at *9 ("The Ninth Circuit has recognized," that judicial review of settlements "takes place in the shadow of the reality that rejection of a settlement

creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk.").

Here, the Rule 23(e)(2) factors demonstrate that the proposed Settlement is fundamentally fair, reasonable, and adequate. The Court should therefore grant preliminary approval.

       1.       **Rule 23(e)(2)(A): The proposed Class Representatives and Class Counsel have adequately represented the Class.**

In evaluating adequacy of representation under Rule 23(e)(2)(A), courts consider: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Junkersfeld v. Med. Staffing Sols., Inc.*, 2022 U.S. Dist. LEXIS 114007, at *18 (E.D. Cal. 2022).

Here, Plaintiffs and their counsel do not have any conflicts of interest with Settlement Class Members. To the contrary, Plaintiffs' interests and those of all other Settlement Class Members are identical. Like other Class Members, Plaintiffs purchased products from Defendant and were shown allegedly deceptive advertising about the regular prices and purported discounts applicable to the products they were purchasing. Complaint ¶¶55-90. Like other Class Members, Plaintiffs allegedly would not have bought the products they purchased, or would have paid less for them, had Defendant's advertising been truthful. *Id.* ¶89. And, Plaintiffs allege that, "like other Class Members, Plaintiffs' primary injury is the loss of income from purchases made at [Defendant's website] as a result of [Defendant]'s false discounts." *Rael v. Children's Place, Inc.*, 2020 U.S. Dist. LEXIS 13970, at *15 (S.D. Cal. 2020). In short, Plaintiffs' "interests are coextensive with, and not antagonistic to, those of the class members." *Garcia*, 2023 U.S. Dist. LEXIS 114412, at *10 (adequacy requirement satisfied).

In addition, Plaintiffs prosecuted the action vigorously on behalf of the Settlement Class. They each provided documents and information needed to file their initial Complaints and the Consolidated Class Action Complaint; they reviewed the pleadings and consulted with counsel on

their experiences with Defendant; they communicated with counsel in the lead up to mediation; they made themselves available during the mediation and discussed the mediation and the class-wide resolution negotiated at the mediation with counsel; and they reviewed, discussed, and approved the terms of the Settlement Agreement. Zuccaro Decl. ¶8; Moody Decl. ¶8; Cohn Decl. ¶8. In short, each of the named Plaintiffs took their roles seriously and vigorously pursued—and continue to pursue—relief on behalf of the Settlement Class.

Moreover, Plaintiffs hired highly competent, qualified counsel to represent the interests of the Settlement Class. Class Counsel at Dovel & Luner are accomplished litigators with ample experience in class actions and complex litigation, including in cases very similar to this one. Franzini Decl. ¶¶4-6; *see Ciuffitelli v. Deloitte & Touche Lp*, 2019 U.S. Dist. LEXIS 61386, at *50-51 (D. Or. 2019) (class counsel was adequate where they were "highly experienced and qualified, having successfully litigated and settled numerous class actions, including securities class actions."). And, counsel has vigorously represented the interests of the Settlement Class, dedicating substantial time and resources to this case on a contingency basis while facing a real risk of recovering nothing and negotiating excellent relief benefitting the Settlement Class.

In short, Plaintiffs have common interests with the Settlement Class and have vigorously prosecuted this case on the Settlement Class's behalf through highly competent, experienced counsel. Plaintiffs and proposed Class Counsel have adequately represented the Class's interests.

### 2.    Rule 23(e)(2)(B): The Settlement is the product of serious, informed, and non-collusive negotiations.

Rule 23(e)(2)(B) considers whether the proposed settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *All Consumer & Reseller Actions (In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.)*, 2016 U.S. Dist. LEXIS 99071, at *639 (N.D. Cal. 2016). Here, the Settlement is the product of arm's-length negotiations between the

Parties, each represented by competent and well-informed counsel, and the Settlement is in no way collusive.

To start, Plaintiffs' counsel was well-informed in all negotiations and negotiated the Settlement only after significant analysis of the case. Counsel engaged in an extensive pre-filing investigation before the cases were even filed. Franzini Decl. ¶12. And before discussing possible settlement, the Parties extensively briefed Defendant's comprehensive Motion to Dismiss. Agreement §II(C); *see* §II(B) above. Then, prior to mediation, the Parties engaged in extensive informal discovery, including the exchange of financial data and sales records, which informed both liability and damages. Agreement §II(D). Using this information, Plaintiffs' counsel developed several detailed class-wide damages models. *Id.* And counsel also worked with a well-regarded expert consultant to conduct a liability analysis. *Id.* Counsel provided all of this to Defendant in a substantive and detailed mediation brief. *Id.* In short, prior to reaching the Settlement, the Parties thoroughly analyzed the relevant claims and defenses, as well as Defendant's exposure. Franzini Decl. ¶12; Agreement §II(F); *see Perks v. ActiveHours, Inc.*, 2021 U.S. Dist. LEXIS 57272, at *13 (N.D. Cal. 2021) ("Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to make an informed decision about the Settlement and about the legal and factual risks of the case").

The Parties enlisted the services of an experienced mediator and former judge, the Honorable Charles "Tim" McCoy (Ret.) of JAMS, to guide settlement discussions. Agreement §II(E); *see Davies v. PeaceHealth*, 2023 U.S. Dist. LEXIS 122310, at *11 (D. Or. 2023) ("The settlement was reached over the course of months of talks with the assistance of a private mediator experienced with class action litigation, which satisfies the Court that the settlement is the result of arm's-length negotiation and is not the product of collusion among the parties."). Judge McCoy is a distinguished former Presiding Judge of the Los Angeles County Superior Court and has successfully led hundreds

of settlement conferences and mediations. After the initial January 10, 2024, mediation was unsuccessful, the Parties continued negotiations through the mediator and attended a second mediation session, which allowed them to further refine their settlement positions and further understand and appreciate of the risks of continued litigation for both sides. Agreement §II(E).

In addition, the Settlement is free of the three "red flags" that the Ninth Circuit has found may suggest potential collusion. *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021). These "'subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations'" are "(1) 'when counsel receive a disproportionate distribution of the settlement'; (2) 'when the parties negotiate a "clear sailing" arrangement' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). None of these signs are present here. Plaintiffs' counsel has agreed to limit their fees and costs request to no more than $2 million—which amounts to approximately 16% of the total estimated Settlement value. Agreement §III(E)(1). So, far from receiving a disproportionate distribution, Class Counsel will receive at most a distribution that is far less than the Ninth Circuit's 25% benchmark that courts in this Circuit routinely award in class actions. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (establishing a 25% benchmark for fees). Plus, Class Counsel will apply to the Court for fees and costs in a separate motion, and the Settlement is not contingent on any particular award being granted. Agreement §III(E)(2-3). In addition, there is no reverter of unclaimed fees: if the Court awards less than the full $2 million that Class Counsel is entitled to request, unawarded fees will be distributed in cash to Class Members who file a claim to receive cash. *Id.* §III(E)(3); *see Russell*, 2022 U.S. Dist. LEXIS 92881, at *17-18 (there were no "subtle signs of collusion" where counsel "stated their intent to request the standard fee of 25%, dependent on the Court's sole

approval and immaterial to the settlement agreement's validity," and the "agreement [was] void of any 'clear sailing' agreements or fund reversion provisions.").

In short, the Agreement was the result of non-collusive, arm's-length negotiations through experienced counsel facilitated by an experienced mediator. This factor weighs in favor of approval.

### 3.    Rule 23(e)(2)(C): The Settlement provides excellent relief.

Rule 23(e)(2)(C) requires the court to evaluate "whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and] (iii) the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2).[3] The relief provided to the class is the most important consideration in evaluating a potential settlement. *See Bayat v. Bank of the West*, 2015 U.S. Dist. LEXIS 50416, at *12 (N.D. Cal. 2015) ("[T]he critical component of any settlement is the amount of relief obtained by the class.").

Here, the Settlement affords the Settlement Class excellent relief—and a straightforward and comprehensive distribution mechanism—notwithstanding the existence of serious obstacles to recovering on the asserted claims. And the terms of any proposed award of attorneys' fees are reasonable, and actually highly favorable to the Class. This factor therefore strongly weighs in favor of approval.

The Settlement affords Class Members excellent relief. As described above, Defendant will provide a $10 direct settlement benefit, in the form of highly flexible store credit or cash, to more than 1,030,000 Settlement Class Members (as described above, this number will continue to grow until Preliminary Approval is granted). This amounts to a total of at least $10 million in direct

---

[3] Rule 23(e)(2)(C) also directs the Court to consider any agreement required to be identified under Rule 23(e)(3). Here, there are no agreements that need to be identified under Rule 23(e)(3).

benefits actually paid to Class Members. And, the Settlement makes available additional funds to

cover notice and administration costs, attorneys' fees and costs, and incentive awards—meaning that

the expenses associated with obtaining relief for the Class will not eat into Settlement Class

Members' recovery. Agreement §§III(E)(3), III(F)(1), IV(B). When these additional funds are

factored in, the total value of the benefits created by the Settlement is at least approximately $12.5

million. Franzini Decl. ¶18. This is an outstanding recovery for Class Members, both individually

and in the aggregate. And such an outcome—which provides meaningful compensation to all Class

Members—is well within the range of reasonable outcomes. *See Randall v. Integrated Commc'n Serv.*,

2023 U.S. Dist. LEXIS 157658, at *13 (W.D. Wash. 2023) ("It is well-settled law that a proposed

settlement may be acceptable even though it amounts only to a fraction of the potential recovery

that might be available to class members at trial.").

       The Settlement provides for a highly desirable method of distribution. In addition to

providing excellent topline relief, the Settlement also provides for a highly desirable method of

distributing relief to Settlement Class Members. Class Members will automatically receive

compensation in the form of a store credit delivered to their email address, with no requirement that

they take any affirmative action. Alternatively, Class Members who can provide proof of purchase

showing that they made a purchase subject to a sitewide discount can easily file a claim to receive

their settlement benefit in cash—without any penalty for choosing cash. Agreement §III(C)(3);

Franzini Decl. ¶17. The Settlement provides for a streamlined claims process, making it simple for

Settlement Class Members to file a claim. Class Members can submit a claim form online or through

the mail, and, for proof of purchase, they can simply provide a screenshot or PDF of a confirmation

email or account page showing they made a purchase subject to a sitewide discount. Agreement

§§IV(D), I(EE) (explaining what constitutes proof of purchase); *id.* Exhibit B (class notice providing

details to Class Members concerning how to show proof of purchase); *id.* Exhibit D (claim form providing details to Class Members concerning how to show proof of purchase).

Through the two-tiered distribution system, the Settlement ensures that every single Class Member will actually receive settlement benefits. Under the terms of the Settlement, any Class Member who does not file a claim will automatically receive their settlement benefit in the form of store credit, taking advantage of the fact that Defendant possesses information allowing for such credits to be delivered by email. *See* §II(C)(2) above, Agreement §III(C)(4). This eliminates the need for Class Members to file a claim to obtain relief and results in far more comprehensive relief than many similar settlements, which typically afford relief only to those class members who file a claim, leaving those who don't with nothing. *See e.g., Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 332 (C.D. Cal. 2016) (preliminarily approving a discount settlement where consumers had to file a claim to receive a settlement benefit); *Chester v. TJX Cos.*, 2017 U.S. Dist. LEXIS 201121, at *21 (C.D. Cal. 2017) (same); *Jacobo v. Ross Stores, Inc.*, 2018 U.S. Dist. LEXIS 248252, at *25 (C.D. Cal. 2018) (same).

Plus, the credits that Class Members will receive under this automatic distribution procedure are as flexible as possible. They can be used for any product on Hottopic.com, without exclusions or restrictions. Agreement §III(C)(5). They can be combined with any other sale or promotion. *Id.* They can be transferred. *Id.* They will never expire and can be used at any time, with no blackout dates, meaning that Class Members can use them whenever they want without any rush or expiration date to keep track of. *Id.* Plus, Class Members will be able to use their credits on a wide variety of products that consumers regularly purchase, and can use the credits without any need to spend more of their own money. Defendant sells *thousands* of items for less than $10 (and hundreds of products for less than $5)—and it sells an extensive range of commonly used products, including, but not limited to, men's, women's, and children's clothing, backpacks and other bags, books, kitchen items (including cups, plates, bowls, and kitchen linens), home décor products (including rugs, posters,

lights, and outdoor products), pet products, accessories (including jewelry, hats, belts, etc.), school supplies, and numerous toys and stuffed animals. Franzini Decl. ¶23. Thus, Class Members will have immense flexibility over when they use their credit and what for, and will be able to purchase a product—or multiple products—without spending any of their own money. Not only that, but Class Members tend to be repeat purchasers of Defendant's products. In fact, the average Class Member made multiple purchases from Defendant during the three-year class period. Franzini Decl. ¶17. This means that Class Members who receive store credit are highly likely to make additional purchases from Defendant after the Settlement, meaning that they are highly likely to be able to use their store credit for a purchase they would have made anyway. Finally, the Settlement allows Class Members to pick up any products they order using their credit in-stores, meaning that Class Members will not have to use their credit (or otherwise pay for) shipping costs. Agreement §III(C)(5).[4]

In short, the credits are not disfavored percent off "coupons"; they are flexible vouchers with real value that Class Members can use for any of a wide variety of commonly used products, and without needing to spend any of their own money. *See Tchoboian v. FedEx Office & Print Servs., Inc.*, 2014 U.S. Dist. LEXIS 184376, at *6 (C.D. Cal. 2014) ("[C]ourts have distinguished between 'coupons,' which provide 'discounts on merchandise or services offered by the defendant,' and 'vouchers,' which provide 'free merchandise or services.'"); *see e.g., In re Online DVD-Rental,* 779 F.3d at 951 (nearly identical Walmart gift cards were not "coupons" where "the settlement [gave] class members $12 to spend on any item carried on the website of a giant, low-cost retailer. The class member [did not need to] spend any of his or her own money and [could] choose from a large number of potential items to purchase."); *Foos v. Ann, Inc.*, 2013 U.S. Dist. LEXIS 136918, at *6

---

[4] There are more than seventy brick-and-mortar Hot Topic locations across California and Oregon. *See* https://www.hottopic.com/customer-service/hot-topic-app/stores/.

(S.D. Cal. 2013) ($15 Ann Taylor vouchers were not coupons because they allowed class members "to obtain $15.00 of free merchandise"); *Cody v. SoulCycle Inc.*, 2017 U.S. Dist. LEXIS 163965, at *19-20 (C.D. Cal. 2017) (noting that "there is a crucial difference between **coupons** and **vouchers**" and holding that credits for SoulCycle classes are not coupons). The credits' full value must therefore be included when valuing the Settlement. *See, e.g.*, *In re Online DVD-Rental* at 949-50 (affirming district court holding that valued gift cards at 100 cents on the dollar); *Hendricks v. StarKist Co.*, 2016 U.S. Dist. LEXIS 134872, at *33 n.3 (N.D. Cal. 2016), *aff'd Hendricks v. Ference*, 754 F. App'x 510, 513 (9th Cir. 2018) ("The Court values the product vouchers at $4 million. Contrary to the objectors' contentions, the vouchers are valued at 100 cents on the dollar."); *Barr v. SelectBlinds LLC*, 2024 U.S. Dist. LEXIS 39068, at *38-39 (C.D. Cal. 2024) (finally approving discount settlement that provided $8.5 million to class members in cash or credit benefits and valuing the credit benefits at face value).

 Continued litigation posed significant risks and costs. The outcome here is particularly excellent given the risks and challenges presented by continued litigation. While Plaintiffs' counsel is very confident in the strength of the case, Defendant has informally provided evidence that Defendant contends challenge many of Plaintiffs' core allegations. Franzini Decl. ¶22. In addition, Defendant has taken the position that Plaintiff Moody and an increasing number of Class Members have agreed to an arbitration agreement that, if the case were not settled, could require those Class Members to arbitrate their claims individually. *Id.*; *see Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, 2021 U.S. Dist. LEXIS 87268, at *16 (N.D. Cal. May 5, 2021) (finding a settlement adequate in light of the risk presented by a class action waiver "which would likely reduce the overall recovery since 'typically only a fraction of individuals pursue arbitration.'").

 Moreover, it is true that discount cases present complicated factual and legal issues and have been dismissed at every stage of litigation. *See e.g.*, *Adams v. Haan*, 2020 U.S. Dist. LEXIS 176002, at *1 (C.D. Cal. 2020) (granting defendant's motion to dismiss in a discount case); *Sperling v. Stein Mart,*

*Inc.*, 291 F. Supp. 3d 1076, 1087 (C.D. Cal. 2018) (granting defendant's motion for summary judgment and denying plaintiffs' motion for class certification in a discount case); *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 U.S. Dist. LEXIS 188341, at *1 (C.D. Cal. 2016) (denying motion for class certification in a discount case). And in particular, courts have repeatedly rejected discount plaintiffs' attempts to calculate class-wide damages or restitution. *See e.g.*, *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 U.S. Dist. LEXIS 37261, at *38 (C.D. Cal. 2016) (granting summary judgment in a discount case because the plaintiffs "failed to demonstrate a viable measure of restitution," and rejecting several proposed models); *see Rael v. Children's Place, Inc.*, 2020 U.S. Dist. LEXIS 13970, at *30 (S.D. Cal. 2020) (preliminarily approving discount settlement and acknowledging risk of continued litigation where the "state of the law regarding the appropriate method for calculating damages or restitution in these types of false pricing cases is in flux"). Plus, even if Plaintiffs overcame this obstacle and were successful in certifying a class with a class-wide damages model, they may still face a motion for summary judgment, and would need to win at trial and potentially beat back appeals to obtain any recovery whatsoever. *See Larsen v. Trader Joe's Co.*, 2014 U.S. Dist. LEXIS 95538, at *12 (N.D. Cal. 2014) ("[S]ettlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal.").

In short, the outcome here is particularly excellent given the substantial risks and challenges presented by continued litigation, which further supports preliminary approval.

<u>Proposed Class Counsel will seek a reasonable fee award, and the Settlement is not contingent on a particular fee award</u>. Proposed Class Counsel will seek their fees as a percentage of the at least approximately $12.5 million in benefits that the Settlement affords the Settlement Class. *See Barr*, 2024 U.S. Dist. LEXIS 39068, at *34 (in a discount settlement that provided class members with cash or credit benefits and included additional funds to pay for fees and costs, calculating attorneys' fees as a percentage of the total value of the settlement). The Settlement Agreement

allows Class Counsel to seek an award of attorneys' fees and costs up to $2 million—or approximately 16% of the Settlement's total estimated value. Agreement §III(E)(1). Proposed Class Counsel will file their fee petition 15 days before the deadline for Class Members to file objections or exclude themselves from the Settlement. Franzini Decl. ¶18.

The amount of fees the Settlement Agreement provides for—16% of the estimated Settlement value—is fair and reasonable. It is significantly less than the Ninth Circuit's 25% benchmark. *See In re Online DVD-Rental,* 779 F.3d at 949 (affirming a fee award of 25% of the total settlement value, and holding that "in this circuit, the benchmark percentage [for attorneys' fees] is 25%"); *In re Portland GE Sec. Litig.*, 2022 U.S. Dist. LEXIS 51404, at *26 (D. Or. 2022) ("When using the percentage method, 25 percent is the 'benchmark' fee award"). In fact, it is at the very low end of attorney fee awards in this Circuit, which often exceed even the benchmark. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2007) ("[N]early all common fund awards range around 30%," and generally "the rate should be set at 30%.").

In short, the Settlement's provisions regarding attorneys' fees are reasonable. This further supports preliminary approval.

### 4.    Rule 23(e)(2)(D): The Settlement treats Class Members equitably relative to each other.

Rule 23(e)(2)(D) asks "whether the proposal 'improperly grant[s] preferential treatment to class representatives or segments of the class.'" *Perks*, 2021 U.S. Dist. LEXIS 57272, at *18.

Here, the Settlement provides all Settlement Class Members with $10 in compensation. In other words, all Class Members receive equal relief under the Settlement. *See Steinberg v. Corelogic Credco, LLC*, 2023 U.S. Dist. LEXIS 177325, at *20 (S.D. Cal. 2023) (settlement did not grant preferential treatment where "every participating settlement class member [would] receive equal payments").

Although the Settlement allows the Class Representatives to petition the Court for incentive awards of up to $2,500, Agreement §III(F)(1), incentive awards are justified "to compensate class representatives for work undertaken on behalf of a class," and are "fairly typical in class action cases." *In re Online DVD-Rental*, 779 F.3d at 943. And, given each Plaintiffs' diligence and commitment to the case, as discussed above, $2,500 awards—which together represent less than .01% of the Settlement's total value—are more than justified. *See Ahmed v. HSBC Bank USA*, 2019 U.S. Dist. LEXIS 104401, at *35 (C.D. Cal. 2019) (incentive award "amounting to less than one percent of the settlement fund" was "warranted given the substantial efforts plaintiffs [had] undertaken on behalf of the class."). Indeed, these awards are at the lower end of what is awarded in this Circuit; and courts routinely allow higher incentive awards. *See, e.g., id.* (explaining that a $5,000 incentive award is "presumptively reasonable."); *Dubeau v. Sterling Sav. Bank*, 2013 U.S. Dist. LEXIS 123337, at *10-11 (D. Or. 2013) (granting incentive awards of $2,500 and noting that "[o]ther courts in this District have approved greater awards than requested here."). Plus, the Settlement is not contingent on the Court approving the $2,500 awards, so there is no risk of a conflict of interest with absent Class Members. Agreement §III(F)(2).

* * *

In short, examination of the Rule 23(e)(2) factors show that the proposed Settlement is fundamentally fair, reasonable, and adequate.

## B.    The Settlement Class satisfies the requirements of Rule 23(a) and (b), and so may be conditionally certified.

"Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes." *In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 610 (S.D. Cal. 2008). To conditionally certify a class, a court must determine that the proposed settlement class satisfies the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, the proposed Class meets all the

requirements of Rule 23(a), as well as the requirements of Rule 23(b)(3). The Court should therefore conditionally certify the Settlement Class.

### 1.    Rule 23(a)(1): The Settlement Class is sufficiently numerous.

Rule 23(a)(1) is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no exact numerical cutoff, "[g]enerally, a class of greater than forty members is sufficient." *Davies v*, 2023 U.S. Dist. LEXIS 122310, at \*4-5. Here, the Settlement Class consists of approximately 1,030,735 members (and because the Class Period ends on the date preliminary approval is granted, the Settlement Class is continuing to grow). Agreement §III(C)(1).

### 2.    Rule 23(a)(2): There are questions of law and fact common to the Settlement Class.

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a 'single significant question of law or fact.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013). And this requirement is "easily satisf[ied]" where class members "all base their claims on the same legal theory." *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007).

Here, Settlement Class Members all base their claims on the same factual predicate and same legal theory: they all purchased products from Defendant's website, and all claim that they were harmed because, they allege, Defendant's price advertising was false and deceptive. Complaint ¶¶111-215 (asserting uniform legal claims on behalf of the named Plaintiffs and Settlement Class Members). As a result, there are numerous common questions of law and fact that will generate common answers for all Settlement Class Members. *See Russell*, 2022 U.S. Dist. LEXIS 92881, at \*7 (commonality was met where the defendant subjected all class members to "its common collection practice," and Class Members' claims alleged "the same violations and implicate[d] the same laws.").

These common questions include, but are not limited to: "whether defendant made false statements in its advertisements; [] whether defendant's advertisements were likely to deceive a reasonable consumer; [] whether defendant's statements regarding its pricing were material to plaintiffs' purchasing decisions … [and] whether plaintiffs have suffered damages as a result of defendant's conduct." *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015) (certifying class in a discount case); *see Chester*, 2017 U.S. Dist. LEXIS 201121, at *14 (holding, in a discount case, "there is a common question of whether Defendants' price comparison advertising resulted in deceptive price comparisons that were likely to deceive a reasonable consumer.").

### 3. Rule 23(a)(3): Plaintiffs' claims are typical to those of the Settlement Class.

Rule 23(a)(3) requires the class representative's claims or defenses be "typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3); *see Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). This standard is "permissive"—claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, Plaintiffs' claims are typical of the Settlement Class. Like all other Settlement Class Members, Plaintiffs purchased products from Defendant and believed, based on Defendant's advertising, that they were receiving a discount and paying less than Defendant's regular prices. Complaint ¶¶55-90. Like other members of the Settlement Class, Plaintiffs raise claims under their states' consumer protection laws (along with several common law claims). And Plaintiffs allege they were subjected to the same type of allegedly unlawful sales and discounts as all absent Class Members, and were injured in the same way. *See In re Premera*, 2019 U.S. Dist. LEXIS 127093, at *32 (typicality was satisfied where the named representatives and the settlement class "all allegedly suffered the same or similar injury from the same alleged conduct"); *Rael*, 2020 U.S. Dist. LEXIS 13970, at *15.

Likewise, while the Settlement Class comprises Class Members from both Oregon and California, Defendant's conduct was the same in both states; the consumer protection and common law claims brought on behalf of all Class Members, as applied to Defendant's conduct, are materially similar. *See generally* Complaint ¶¶111-209. Plus, in any event, there are named Plaintiffs from each represented state, meaning that—at a minimum—Ms. Zuccaro's claims are typical of the Oregon Subclass and Ms. Moody and Mr. Cohn's claims are typical of the California Subclass.

In short, Plaintiffs' claims arose from the same conduct that allegedly injured all Class Members—Defendant's allegedly deceptive sales practices—and Plaintiffs and Class Members were allegedly harmed in the same way by this conduct. Plaintiffs' claims are typical of those of the Settlement Class.

### 4. Rule 23(a)(4): Plaintiffs and proposed Class Counsel have fairly and adequately represented the Settlement Class's interests.

Rule 23(a)(4) involves the same inquiry as Rule 23(e)(2)(A), and focuses on whether the proposed Class Representatives have the same interests as other Class Members, and whether they, and Class Counsel, will vigorously prosecute the case for the Class. *See Kimbo v. MXD Grp., Inc.*, 2021 U.S. Dist. LEXIS 25825, at *10 (E.D. Cal. 2021) (explaining that the two rules require the same "redundant" analysis). Here, as discussed above, the proposed Class Representatives have the same interests as absent Class Members and have worked diligently on behalf of the Settlement Class. *See* §III(A)(1) above. And proposed Class Counsel are competent litigators with ample experience in class litigation who have dedicated substantial time to this case. *Id.*; *see Davies*, 2023 U.S. Dist. LEXIS 122310, at *6-7 (in finding adequacy satisfied, noting that proposed class counsel were "experienced class action attorneys" who had "successfully litigated a similar claim in Washington state.").

### 5. Rule 23(b)(3): Common questions predominate, and a class action is superior to other available methods of adjudication.

Rule 23(b)(3) requires that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Conditional certification is proper under Rule 23(b)(3) "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

Here, the proposed Settlement Class meets both requirements of Rule 23(b)(3).

<u>Common questions predominate</u>. "The predominance inquiry … asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1019 (9th Cir. 2011). Thus, where "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Here, Plaintiffs allege that, by advertising false sales, discounts, and prices that deceived consumers, Defendant acted unlawfully towards all Settlement Class Members in the same way. And, this "basic common question—whether defendant's price comparison scheme generated false advertisements that deceived consumers—predominates." *Spann*, 314 F.R.D. at 322 (certifying class of discount purchasers under Rule 23(b)(3)). Indeed, "regardless of the volume, price, timing, or location for any [Class Member's] qualifying purchase, all claims will require the Court to analyze whether Defendant's pricing scheme and pattern of discounting prices was lawful." *Rael*, 2020 U.S. Dist. LEXIS 13970, at *18-19. Thus, "common questions predominate over individual questions." *Id.* at 18; *Jacobo*, 2018 U.S. Dist. LEXIS 248252, at *21 (predominance satisfied in a discount case).

<u>A class action is the superior mechanism for resolution of this dispute</u>. The superiority requirement asks whether a class action is "superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class actions are superior where the "'risks, small recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually pursue their claims." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017).

Here, Defendant sells products that regularly sell for modest prices, with many products priced at less than $10, and even Settlement Class Members who purchased more expensive products are unlikely to have spent more than few hundred dollars at most. *See* Franzini Decl. ¶23; Complaint ¶¶61-62, 65-76, 78-81 (detailing how much Plaintiffs spent on Defendant's products). So, were Settlement Class Members to litigate their claims on an individual basis, they would quickly spend more on litigating than they could hope to recover in damages. *See Russell*, 2022 U.S. Dist. LEXIS 92881, at *11 ("Central to [the superiority] inquiry, and class actions generally, is the goal of overcoming 'the problem that small recoveries do not provide the incentive for individuals to bring a solo action.'"); *Jacobo*, 2018 U.S. Dist. LEXIS 248252, at *22 (class action was superior in a discount case).

Plus, importantly, all Settlement Class Members' claims involve the same issues arising from the same facts. So class treatment protects court resources by avoiding millions of lawsuits raising identical questions. *See Anderson v. Davis Wright Tremaine Ltd. Liab. P'ship,* 2023 U.S. Dist. LEXIS 166884, at *35 (D. Or. 2023) (class treatment was superior where the "alternative method of resolving [the] matter would involve pursuing approximately 103 individual lawsuits or settlements, which would 'unnecessarily burden the judiciary,' and 'would prove uneconomic for potential plaintiffs.'").

\* \* \*

In short, the proposed Settlement Class satisfies the requirements of Rule 23 and should be conditionally certified.

### C.    The Court should approve the proposed notice plan.

Under Rule 23(e)(1) "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Here, the Parties' proposed notice plan is the "best notice that is practicable under the circumstances" and should be approved by the Court. Fed. R. Civ. P. 23(c)(2)(B); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

The Parties have devised a multi-step notice plan designed to provide all necessary information to Settlement Class Members to enable them to make a well-informed decision about their participation in the Settlement. First, Defendant will provide a list identifying Class Members, as well as their emails and relevant addresses, to the Settlement Administrator. Agreement §IV(C)(1). Then, as discussed above, all Settlement Class Members will receive direct notice by email or by mail, if email notice fails. *Id.* §IV(C)(3-4); Passarella Decl. ¶¶ 6-14. The notices are drafted in plain English and provide all relevant information about the case, the Settlement, and Settlement Class Members' rights. Agreement, Exhibits A, B, D. In particular, the notices provide information about the nature of the claims, a summary of the Settlement terms, and the relevant deadlines. *Id.* The notices also inform Class Members about their ability to file a claim for a cash benefit, and explain that claims must be accompanied by proof of purchase. *Id.* And they notify Class Members of their rights to opt out of or object to the Settlement. *Id.*

In addition to providing Class Members with notice, the Settlement Administrator will establish a Settlement Website, where Class Members can review relevant documents, and important dates and deadlines pertinent to the Settlement. Agreement §IV(C)(5); Passarella Decl. ¶ 16.

In light of this comprehensive plan, the Court should approve the notice plan and appoint Kroll as the Settlement Administrator. Kroll has significant experience administering class action settlements and believes that the proposed plan will provide the best notice practicable under the circumstances. Passarella Decl. ¶15.

IV.    **Conclusion.**

For the foregoing reasons, the Motion should be granted.


Dated: July 22, 2024                        Respectfully submitted,
                                            By: */s/ Simon Franzini*_____

                                            Simon Franzini (Cal. Bar No. 287631)*
                                            simon@dovel.com
                                            Grace Bennett (Cal Bar No. 345948)*
                                            grace@dovel.com
                                            Jonas Jacobson (OSB No. 231106)
                                            jonas@dovel.com
                                            Dovel & Luner, LLP
                                            201 Santa Monica Blvd., Suite 600
                                            Santa Monica, CA 90401
                                            Tel: (310) 656-7066

                                            *Attorneys for Plaintiffs*

                                            * Admitted *pro hac vice*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 8,926 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: July 22, 2024

Respectfully submitted,
By: */s/ Simon Franzini*
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com

\* Admitted *pro hac vice*