Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Grace Bennett (Cal Bar No. 345948)*
grace@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066

*Attorneys for Plaintiffs*

* Admitted *Pro Hac Vice*


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| JAMIE ZUCCARO, CATHERINE MOODY, and ANDREW COHN, each individually and on behalf of all others similarly situated, | Case No. 3:23-cv-01242-MO **Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement** |
| *Plaintiffs*, | |
| v. | |
| HOT TOPIC, INC., | |
| *Defendant.* | |

**Table of Contents**

I.     Introduction. ........................................................................................................1

II.    The Settlement. ..................................................................................................2

       A.    The Settlement Class. ..............................................................................2

       B.    Direct benefits to the Settlement Class. ..................................................2

       C.    Payment of administration costs, attorneys' fees, and incentive awards. .....................3

III.   Settlement administration and notice. ................................................................4

       A.    The notice provided to Class Members. ..................................................4

       B.    Opt-outs and objections. ..........................................................................6

IV.    The Court should finally approve the Settlement. ..............................................6

       A.    The Court should finally certify the Settlement Class. ...........................6

       B.    The Settlement is fair, reasonable, and adequate. ..................................6

             1.    Rule 23(e)(2)(A): The Class Representatives and Class Counsel
                   adequately represented the Class's interests. ...........................8

             2.    Rule 23(e)(2)(B): The Settlement was negotiated at arm's length. .....................9

             3.    Rule 23(e)(2)(C): The Settlement provides excellent relief. ..............................10

             4.    Rule 23(e)(2)(D): The Settlement treats Class Members equitably. ................14

             5.    The Class's reaction to the Settlement was overwhelmingly positive. ............15

       C.    The notice plan fairly and adequately informed Class Members of the
             Settlement. ............................................................................................18

IV.    Conclusion. .......................................................................................................18

**Table of Authorities**

## Cases

*Anderson v. Davis Wright Tremaine Ltd. Liab. P'ship*,
    2024 U.S. Dist. LEXIS 105746 (D. Or. April 29, 2024)......................................................10

*Arnett v. Bank of America*,
    2014 U.S. Dist. LEXIS 130903 (D. Or. Sept. 18, 2014)......................................................16

*Barr v. SelectBlinds LLC*,
    2024 U.S. Dist. LEXIS 39068 (C.D. Cal. Mar. 4, 2024) ...................................................11

*Boohoo.com USA, Inc., et al.*,
    Case No. 20-cv-3332-GW-JEMx (C.D. Cal. Dec. 16, 2022) ..............................................12

*Bravo v. Gale Triangle, Inc.*,
    2017 U.S. Dist. LEXIS 77714 (C.D. Cal. Feb. 16, 2017)...................................................16

*Broomfield v. Craft Brew All, Inc.*,
    2020 U.S. Dist. LEXIS 74801 (N.D. Cal. Feb. 5, 2020) ....................................................10

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010)................................................................................17

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004)...............................................................................7, 15, 17

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992).............................................................................................7

*Clemans v. New Werner Co.*,
    2013 U.S. Dist. LEXIS 167454 (W.D. Wash. Nov. 22, 2013)...........................................15

*De Leon v. Ricoh USA, Inc.*,
    2020 U.S. Dist. LEXIS 56285 (N.D. Cal. Mar. 31, 2020) .................................................16

*Demmings v. KKW Trucking, Inc.*,
    2018 U.S. Dist. LEXIS 159749 (D. Or. Sept. 19, 2018) ......................................................8

*Dennis v. Kellogg Co.*,
    2013 U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14, 2013)............................................5, 16

*Edwards v. Nat'l Milk Producers Fed'n*,
    2017 U.S. Dist. LEXIS 1452173 (N.D. Cal. June 26, 2017) ................................................5

*Eisen v. Porsche Cars N. Am., Inc.*,
    2014 U.S. Dist. LEXIS 14301 (C.D. Cal. Jan. 30, 2014)..................................................10

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011)................................................................................................8

*Foos v. Ann, Inc.*,
    2013 U.S. Dist. LEXIS 136918 (S.D. Cal. Sept. 23, 2013) ...............................................12

*Garcia v. Harborstone Credit Union*,
    2023 U.S. Dist. LEXIS 201873 (W.D. Wash. Nov. 9, 2023) .............................................13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)............................................................................................7

*Harrison v. Harry & David Operations, Inc.*,
  2022 US Dist LEXIS 178196 (D. Or. Sept. 29, 2022)......................................................13

*In re LinkedIn User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ....................................................................................11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) ...............................................6

*Jacobo v. Ross Stores, Inc.*,
  2019 U.S. Dist. LEXIS 247426 (C.D. Cal. Aug. 6, 2019) .......................................11, 15

*Khan v. Boohoo.com USA, Inc., et al.*,
  No. 20-cv-3332-GW-JEMx (C.D. Cal. Dec. 16, 2022)....................................................15

*Lane v. Brown*,
  166 F. Supp. 3d 1180 (D. Or. Jan. 16, 2016) .................................................................10

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998)..........................................................................................9

*Lo v. Oxnard European Motors, LLC*,
  2012 U.S. Dist. LEXIS 73983 (S.D. Cal. May 29, 2012) ................................................16

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
  13 U.S. Dist. LEXIS 179190 (C.D. Cal. Dec. 5, 2013) ..................................................16

*Medeiros v. HSBC Card Servs.*,
  2017 U.S. Dist. LEXIS 178484 (C.D. Cal. 2017)...........................................................11

*Officers for Justice v. Civil Serv. Com.*,
  688 F.2d 615 (9th Cir. 1982)............................................................................................7

*Peterson v. BSH Home Appliances Corp.*,
  2024 U.S. Dist. LEXIS 105624 (W.D. Wash. June 13, 2024) ...........................................5

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...........................................................................................17

*Russell v. Kohl's Dep't Stores, Inc.*,
  755 F. App'x 605 (9th Cir. 2018) .....................................................................................11

*Russell v. Kohl's Department Stores, Inc.*,
  2019 U.S. Dist. LEXIS 241132 (C.D. Cal. Feb. 22, 2019) ..............................................11

*Shvager v. Viasat, Inc.*,
  2014 U.S. Dist. LEXIS 200808 (C.D. Cal. Mar. 10, 2014)..............................................17

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) ....................................................................12, 15

*Steinberg v. Corelogic Credco, LLC*,
  2023 U.S. Dist. LEXIS 177325 (S.D. Cal. Oct. 2, 2023) .................................................15

*Williams v. Udemy, Inc.*,
    2023 Cal. Super. LEXIS 65128 (S.D. Super. Ct. Aug. 28, 2023) ........................................................11

**Rules**

Fed. R. Civ. P. 23(e)(2) .........................................................................................................................7

Fed. R. Civ. P. 23(e)(2)(C) ..................................................................................................................10

**Certification of Compliance with Local Rule 7-1**

Pursuant to Local Rule 7-1, Plaintiffs' counsel has conferred in good faith with Defendant's counsel before submitting this motion. Defendant, Hot Topic, Inc., supports final approval and has reviewed the Motion, but reserves its right to contest any specific representations made by Plaintiffs within the below Memorandum.

**Motion for Final Approval of Class Action Settlement**

Pursuant to Federal Rule of Civil Procedure 23(e) and other applicable law, Plaintiffs Jamie Zuccaro, Catherine Moody, and Andrew Cohn hereby move this Court for entry of an order:

1. Finally certifying the Settlement Class for settlement purposes;

2. Finally approving the class action Settlement as fair, adequate, and reasonable.

This Motion is based on the Memorandum in Support of the Motion provided below, as well as the Declarations of Simon Franzini and Patrick Passarella (on behalf of Kroll Settlement Administration LLC), filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter.

**<u>Memorandum in Support of Plaintiffs' Unopposed[1] Motion for Final Approval of Class Action Settlement</u>**

## I.    Introduction.

The Parties reached a hard-fought class-wide settlement in this case. Under the Settlement, the Settlement Class will receive benefits worth more than $16 million, with direct compensation of $10 for each Class Member, regardless of whether they submit a claim.[2] This is an excellent outcome for the Class, especially given the significant risks presented by continued litigation.

On July 29, 2024, the Court reviewed the Settlement Agreement and granted preliminary approval. Dkt. 25 ("Preliminary Approval Order") at 8. The Court found that the Settlement satisfied all requirements of Rules 23(e)(1)(B) and 23(e)(2) for preliminary approval and conditional certification of the Settlement Class. *Id.* at 2-6. Following preliminary approval, the Court-appointed Settlement Administrator faithfully executed the approved notice plan. *See generally* Passarella Decl. Notice was near-universal and the Class's reaction was overwhelmingly positive: in a Class of well over one-million people, not a single Class Member objected to the Settlement, and only six opted out.

Every factor that the Court analyzed at preliminary approval favors final approval. Though the Court's review at preliminary approval was of course preliminary, the Court has already examined all of the material terms of the Settlement and considered most of the factors that must be

---

[1] Defendant has informed Plaintiffs that although Defendant supports final approval and has reviewed this brief and its supporting declarations as to form, it reserves its right to contest any representations made by Plaintiffs herein as it relates to the merits of the lawsuit, Plaintiffs' factual allegations or description of the procedural history, the propriety of class certification, the propriety of any fee awards, characterizations of the litigation to date, any assessments or projections of the strengths or weakness of any contention before this Court or on appeal, and any calculation of settlement amounts.

[2] As explained in Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards, this number is higher than initially estimated in the Preliminary Approval papers because there are more Class Members than the Parties initially estimated. Dkt. 26 ("Fee Motion") at 1.

considered at final approval under Rule 23(e)(2) and Ninth Circuit precedent. The only relevant factor not yet considered— the Class's reaction to the Settlement after the successful administration of notice—bolsters the Court's preliminary finding of the Settlement's fairness, reasonableness, and adequacy. Therefore, the Court should finally certify the Settlement Class and grant final approval of the Settlement.

## II.    The Settlement.

### A.    The Settlement Class.

The Settlement Class, as conditionally certified at preliminary approval, consists of:

- all persons who, while a resident of the state of California, purchased one or more products on the Hot Topic Website from March 15, 2019, to July 29, 2024 ("California Settlement Subclass"); and

- all persons who, while a resident of the state of Oregon, purchased one or more products on the Hot Topic Website from August 25, 2022, to July 29, 2024 ("Oregon Settlement Subclass").

Preliminary Approval Order at 5-6; *see* Dkt. 24-1 ("Agreement") §I(II). According to Defendant's records, there are 1,391,496 Class Members. Passarella Decl. ¶5.

### B.    Direct benefits to the Settlement Class.

The Settlement Agreement requires Defendant to provide benefits worth more than $16 million to the Settlement Class. Franzini Decl. ¶14.

Each Settlement Class Member will receive a $10 settlement benefit, for a total of approximately $14 million in direct compensation to Class Members. Class Members will automatically—without any need to file a claim or take any other action—receive a $10 store credit to use on Defendant's website. The credits are as flexible as possible, and provide meaningful relief for Class Members. Credits can be used to purchase any product on Defendant's website,

www.Hottopic.com, without any restrictions or blackout dates. Agreement §III(C)(4). They never expire, can be combined with any other discounts or offers, and are freely transferable between consumers. *Id.* And, because Defendant sells a wide variety of commonly used and purchased items (including clothing, home décor, accessories, kitchen products, and toys), and sells thousands of products for less than $10, Class Members can use their credit to purchase a wide range of products without spending any of their own money. Franzini Decl. ¶19.

As discussed in more detail below, Class Members are overwhelmingly loyal customers of Defendant: on average, Class Members placed at least approximately two-and-a-half online orders from Defendant during the Class Period. Franzini Decl. ¶16; *see* § IV(B)(3) below (providing more detail on this). This means that the vast majority of Class Members will make additional purchases from Defendant in the future, and so will be able to use the website credit they will receive from the Settlement towards a purchase they were going to make anyway. Franzini Decl. ¶16. Plus, any Class Member who made a purchase subject to a percentage-off sitewide discount can elect to receive relief in cash instead of store credit by submitting a straightforward claim to receive their benefit in cash, further increasing flexibility for those Class Members. *Id.* §III(C)(3); Exhibit D (claim form).

### C.    Payment of administration costs, attorneys' fees, and incentive awards.

On top of the direct benefits that will be provided to class members discussed above, the Settlement provides that Defendant will also pay for notice and administration costs, attorneys' fees and costs, and incentive awards, as approved by the Court. Agreement §§ III(E)(3), III(F)(1), IV(B). Payment of these costs is on top of the $10 settlement benefit provided to each Class Member, meaning that these costs will not reduce the value of the direct benefits discussed above in any way.

The Parties initial estimate for notice and administration costs was between $120,000-$207,000. Dkt. 24 ("Preliminary Approval Motion") at 8. The Parties and the Settlement

Administrator are still determining the final costs. As explained above, payment of notice and administration costs will not impact the benefits provided to the Settlement Class.

In addition, Class Counsel requested a fee award of $1,987,218.34 and costs of $12,781.66. Dkt. 26 ("Fee Motion") at 1. Together, the requested fees and costs amount to approximately 12.5% of the total benefits provided to Class Members by the Settlement, far less than the Ninth Circuit's 25% benchmark for fee awards in class actions. *Id.* at 6-10. And the request is supported by each of the factors used to assess the reasonableness of attorneys' fees. Fee Motion at 10-16. The requested reimbursement of litigation and settlement expenses is also reasonable. *Id.* at 23-24.

Class Counsel also requested incentive awards of $2,500 each for the three Class Representatives. *Id.* at 24. Such awards are justified to compensate the Class Representatives for their crucial service to the Class. *Id.*

## III.    Settlement administration and notice.

### A.    The notice provided to Class Members.

Kroll Settlement Administration LLC ("Kroll"), the Court-appointed Settlement Administrator, administered notice to the Settlement Class in substantially the same form and content approved by the Court at preliminary approval. Preliminary Approval Order at 6-7 (approving the proposed notice plan); *id.* at 7 (appointing Kroll as the Settlement Administrator and directing Kroll to implement the notice plan). First, Kroll collected a Class List consisting of names, emails, and addresses from Defendant. Passarella Decl. ¶5. After the list was reviewed for potential duplicates, a total of 1,391,496 unique Class Members were identified. *Id.* ¶. Kroll then used this list to send email notice to all Class Members for whom a valid email address was in Defendant's possession. *Id.* ¶9. The email notice provided an explanation of the nature of the claims asserted in the lawsuit, a summary of the Settlement terms, and a statement about the release of claims. *Id.* Ex. B (email notice). The notice also provided instructions on how Class Members could opt out of or

object to the Settlement, and how to file a claim for cash relief, along with the respective deadlines to do so. *Id.* In total, email notice was successfully delivered to 1,227,098 Class Members. *Id.* ¶9. Where email notice failed, Kroll provided mail notice to the Class Member's shipping address associated with their most recent purchase from Defendant to a California or Oregon address. *Id.* ¶¶ 10-12; *id.* Ex. E (postcard notice). Mail notice was successfully delivered to 161,690 Class Members. *Id.* ¶¶ 10-12 (describing this process).

    In total, direct notice was successful for more than 99% of the Class. *Id.* ¶13. This near-universal notice is an outstanding result, far more than is required. *See Edwards v. Nat'l Milk Producers Fed'n*, 2017 U.S. Dist. LEXIS 1452173, at \*19 (N.D. Cal. June 26, 2017) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23."); *Dennis v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 163118, at \*18 (S.D. Cal. Nov. 14, 2013) ("Rule 23 only requires that the notice be the 'best practicable under the circumstances.' It need not be perfect." (citations omitted)); *see, e.g., Peterson v. BSH Home Appliances Corp.*, 2024 U.S. Dist. LEXIS 105624 (W.D. Wash. June 13, 2024) (finding notice sufficient where it reached 71% of the class).

    In addition to disseminating direct notice, Kroll designed and hosted a Settlement Website containing all relevant information about the Settlement. Passarella Decl. ¶6. The Website provides access to relevant documents concerning the Settlement, including the Settlement Agreement, the Preliminary Approval Order, and, after it was filed, Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards (and accompanying documents).[3] It also includes a page dedicated to answering "Frequently Asked Questions," including about the claims in the lawsuit, the Settlement benefits, the process to file a claim form, the steps to opt out of or object to the Settlement, and Class Counsel's role in the Settlement and requested fees.[4] And, for Class Members who wish to submit a claim for

---

[3] https://www.hottopicclassaction.com/documents.
[4] https://www.hottopicclassaction.com/faq.

cash relief, it offers a fillable version of the claim form that Class Members can easily complete and submit online. In case Class Members have additional questions, the Settlement Website, as well as the distributed notice forms, lists the contact information for the Settlement Administrator, including the number of a toll-free hotline that has run 24 hours a day, 7 days a week since notice was first disseminated. Passarella Decl. ¶7.

### B.    Opt-outs and objections.

As explained above, Settlement Class Members were provided clear and specific instructions on how to opt out of or object to the Settlement, in both direct notice forms and on the Settlement Website. And of the almost 1.4 million Class Members, only six people requested to be excluded from the Settlement, and not a single person objected (to the Settlement itself or to Class Counsel's fees and costs request). Passarella Decl. ¶18; *see* §IV(B)(5) below (discussing this in detail).

## IV.    The Court should finally approve the Settlement.

### A.    The Court should finally certify the Settlement Class.

In granting preliminary approval, the Court found that "Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied," and preliminarily certified the class, as defined in the Settlement Agreement, for the purposes of settlement. Preliminary Approval Order at 5. No circumstances have changed since then that would justify altering that decision, so the Court should reach the same conclusion here for all the reasons set forth in the Court's Preliminary Approval Order. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298, at *241 (C.D. Cal. July 24, 2013) (certifying class and stating "[n]othing has changed in the five-month period between that preliminary class certification and today that suggests to the Court that the class should be decertified").

### B.    The Settlement is fair, reasonable, and adequate.

A court may approve a class action settlement "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is fair, reasonable, and adequate, a court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id.* In the Ninth Circuit, this inquiry can also include the following similar factors from the Circuit's decision in *Churchill*: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). And in weighing the factors, courts must remember that "[s]ettlement is the offspring of compromise; the question ... is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); s*ee Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is

concerned."). Here, Class Counsel negotiated an excellent settlement that is fair, reasonable, and free from collusion. All relevant factors weigh in favor of final approval.

> 1. **Rule 23(e)(2)(A): The Class Representatives and Class Counsel adequately represented the Class's interests.**

To determine whether a class has been adequately represented, "courts must resolve two questions." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). First, "do the named plaintiffs and their counsel have any conflicts of interest with other class members?" *Id.* And second, have "the named plaintiffs and their counsel prosecute[d] the action vigorously on behalf of the class?" *Id.*

Here, neither the Class Representatives, nor Class Counsel, have any conflicts of interest with absent Class Members. Dkt. 24-3 ("Cohn Decl.") ¶7; Dkt. 24-4 ("Moody Decl.") ¶7; Dkt. 24-5 ("Zuccaro Decl.") ¶7. And both Counsel and the Class Representatives vigorously prosecuted this action on behalf of the Class. Cohn Decl. ¶8; Moody Decl. ¶8; Zuccaro Decl. ¶8; Franzini Decl. ¶23. Before even filing a case, Class Counsel conducted a thorough investigation into Defendant's sales and pricing. Franzini Decl. ¶11. And, after filing Plaintiffs' cases, Counsel vigorously prosecuted them, including combatting a comprehensive Motion to Dismiss in the California case, and undertaking significant legal research and analysis to fully understand the strength of Plaintiffs' claims. *Id.* Plus, "Class Counsel has 'particular expertise and substantial experience' with 'fake discount' class actions, like the one alleged in this case, that involve online retailers advertising purportedly time-limited discounts, when in fact, their products are always discounted." *Barr v. SelectBlinds LLC*, 2024 U.S. Dist. LEXIS 39068, at *16 (C.D. Cal. Mar. 4, 2024). And Counsel drew on this extensive experience in litigating this action and negotiating an excellent settlement for the Class. Franzini Decl. ¶¶ 5-7; *see Demmings v. KKW Trucking, Inc.*, 2018 U.S. Dist. LEXIS 159749, at *15 (D. Or. Sept. 19, 2018) (finally approving a settlement and finding adequacy of representation

where class counsel were "experienced in class action litigation and [] competent to represent the interests of the Class Members.").

Thus, the Class Representatives and Class Counsel adequately represented the Settlement Class. This factor weighs in favor of final approval.

### 2. Rule 23(e)(2)(B): The Settlement was negotiated at arm's length.

As explained in Plaintiffs' Motion for Preliminary Approval, this Settlement was the product of arm's length negotiation between the Parties after substantial evaluation of the strength of the claims and the risks associated with continued litigation. *See* Preliminary Approval Motion at 11-14.

Class Counsel entered mediation only after all the material information was exchanged, and an extensive analysis of the case was performed. In the California case, the Parties extensively briefed Defendant's comprehensive Motion to Dismiss. Franzini Decl. ¶10. And then, prior to entering mediation, the Parties engaged in extensive informal discovery, including the exchange of financial data and sales records, which informed both liability and damages. *Id.* ¶11. Plaintiffs' counsel used this information to develop multiple damages models, and worked with a well-regarded expert to conduct a liability analysis as well. *Id.* Counsel provided all of this to Defendant in a substantive and detailed mediation brief. *Id.* Thus, the Parties entered settlement discussions well-informed about the case, including the relevant claims and defenses, and Defendant's exposure. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (internal quotations omitted).

The Parties' negotiations were arduous and included multiple mediation sessions and many months of discussion. Franzini Decl. ¶¶ 12-14. To guide the mediations, the Parties enlisted the services of an experienced mediator and former judge, the Honorable Charles "Tim" McCoy (Ret.) of JAMS. *Id.* ¶12. The enlistment of a private mediator further shows that the Settlement was

negotiated at arm's length, and without any collusion. *See Eisen v. Porsche Cars N. Am., Inc.*, 2014 U.S. Dist. LEXIS 14301, at *14 (C.D. Cal. Jan. 30, 2014) (collecting cases) ("[W]here the services of a private mediator are engaged, this fact tends to support a finding that the settlement valuation by the parties was not collusive."); *Anderson v. Davis Wright Tremaine Ltd. Liab. P'ship*, 2024 U.S. Dist. LEXIS 105746, at *11 (D. Or. April 29, 2024) (that the settlement resulted from "very lengthy negotiations facilitated by a highly-experienced mediator" weighed "in favor of approv[al]").

In short, the Settlement resulted from contentious, arm's length negotiations. So, this factor weighs in favor of final approval.

### 3. Rule 23(e)(2)(C): The Settlement provides excellent relief.

In considering whether to grant final approval, "[t]he relief that the settlement is expected to provide to class members is a central concern" under both Rule 23(e) and Ninth Circuit precedent. *Broomfield v. Craft Brew All, Inc.*, 2020 U.S. Dist. LEXIS 74801 at *26 (N.D. Cal. Feb. 5, 2020); *see* Fed. R. Civ. P. 23(e)(2)(C); *Lane v. Brown*, 166 F. Supp. 3d 1180, 1189 (D. Or. Jan. 16, 2016) ("[T]he critical component of any settlement is the amount of relief obtained by the class."); *Churchill*, 361 F.3d at 575 (listing "the amount offered in settlement" as a factor for courts to consider at final approval).

Here, the Settlement affords the Settlement Class excellent relief, especially when balanced against the risks and expense of continued litigation. As described in greater detail above, the Settlement provides $10 in direct benefits to each of the almost 1.4 million Class Members, resulting in total direct relief approximating $14 million. *See* §II(B) above. And in addition to this direct relief, the Settlement requires Defendant to cover notice and administration costs, attorneys' fees and costs, and incentive awards. Agreement §§III(E)(3), III(F)(1), IV(B). When these costs are factored in, the total value of the Settlement is more than $16 million. Franzini Decl. ¶14; *see Broomfield*, 2020 U.S. Dist. LEXIS 74801, at *80 (to calculate the value of a settlement, "the Ninth Circuit and courts

in this district have included attorneys' fees, settlement administration costs, and litigation expenses"

in the total value). This is an outstanding recovery, and compares favorably tomany settlements

approved in this Circuit in similar cases. *See e.g.*, *Jacobo v. Ross Stores, Inc.*, 2019 U.S. Dist. LEXIS

247426, at *10 (C.D. Cal. Aug. 6, 2019) (granting approval of settlement of case alleging deceptive

price advertising which provided $4.85 million in total relief to a class of almost 4 million, and

providing relief to only those who filed claims); *Russell v. Kohl's Dep't Stores, Inc.*, 755 F. App'x 605,

608 (9th Cir. 2018) (affirming approval of settlement of case alleging deceptive price advertising

which provided $6.15 million in total relief to a class of over 8.8 million, and providing relief to only

those who filed claims); *Russell v. Kohl's Department Stores, Inc.*, 2019 U.S. Dist. LEXIS 241132 (C.D.

Cal. Feb. 22, 2019), Dkt. 86-1 (final approval motion describing that settlement); *Williams v. Udemy,*

*Inc.*, 2023 Cal. Super. LEXIS 65128, at *2 (S.D. Super. Ct. Aug. 28, 2023) (granting approval of

settlement of case alleging deceptive price advertising that provided for $4 million in total relief to a

class of more than 7 million, and providing relief to only those who filed claims); *see Medeiros v.*

*HSBC Card Servs.*, 2017 U.S. Dist. LEXIS 178484, at *14 (C.D. Cal. Oct. 23 2017) ("Because the

amount offered in settlement compares favorably to other CIPA class action settlements, the Court

finds that the settlement in this case is fair, adequate, and reasonable."); *In re LinkedIn User Privacy*

*Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015) (granting final approval where "the amount of the

agreed-upon settlement fund compare[d] favorably to that of other similar class actions.").

      Importantly, the relief here is comprehensive: each Class Member will be sent the settlement

benefit they are owed, whether they file a claim or not. This means that the approximately $14

million in direct benefits will be paid out in full; and each Class Member will receive their settlement

benefit. Plus, the Settlement is not a disfavored "coupon" settlement. Preliminary Approval Order at

3 (finding that "this is not a 'coupon' settlement."); *see Barr v. SelectBlinds LLC*, 2024 U.S. Dist.

LEXIS 39068, at *35 n.3 (C.D. Cal. Mar. 4, 2024) (holding that a settlement of a case alleging

deceptive price advertising that provided class members store credit by default or cash if they filed a claim was not a coupon settlement and explaining why); *Boohoo.com USA, Inc., et al.*, Case No. 20-cv-3332-GW-JEMx, Dkt. 199 (C.D. Cal. Dec. 16, 2022) (tentative order granting final approval), *id.* Dkt. 200 (adopting tentative) (holding that a settlement of a case alleging deceptive price advertising, which awarded $10 gift cards and free shipping, was not a coupon settlement); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1262 n.14 (C.D. Cal. 2016) (holding that a settlement of a case alleging deceptive price advertising, which awarded JC Penney store credit or cash at class members' election, was not a coupon settlement). Instead, the Settlement provides meaningful and flexible store credit that can be used to purchase products without Class Members spending any of their own money. Franzini Decl. ¶19 (explaining that Defendant sells thousands of products for less than the credit value of $10); Fee Motion at 7-8 (discussing this); *see Foos v. Ann, Inc.*, 2013 U.S. Dist. LEXIS 136918, at *6 (S.D. Cal. Sept. 23, 2013) (Ann Taylor vouchers were not coupons because they allowed class members "to obtain … free merchandise").

The credits provided under the Settlement can be used to purchase any product on Defendant's website. Agreement §III(C)(4). They do not expire, so Class Members can wait and use the credit on a product they really want. *Id.* They can be combined with any other sales or discounts. *Id.* And they can be transferred to another consumer. *Id.* And because Defendant sells thousands of items for less than $10—and hundreds for less than $5—Class Members can use their credit and purchase an item without spending any of their own money. Franzini Decl. ¶19.

Each of these features was included in the Settlement to ensure that the credits were as flexible as possible so that Class Members can easily use them. And Defendant's data demonstrates that Class Members are loyal customers who make frequent purchases from Defendant. Class Members made at least approximately two-and-a-half purchases on average on Defendant's website during the Class Period. Franzini Decl. ¶16. And many Class Members made far more purchases.

For example, Class Representative Catherine Moody made more than one dozen separate purchases from Hot Topic during the Class Period. *Id.* ¶16 n.1. This shows that—even without the benefit of a settlement credit—Class Members are very likely to make another purchase on Defendant's website in the next few years and will almost certainly make another purchase at some point in their lifetime. Thus, Class Members will be able to apply the credits provided by the Settlement—which never expire and can be used at any time with no blackout periods—towards purchases that they would have made anyway.

The factors enumerated in Rule 23(e)(2)(C), and the related factors listed in the Ninth Circuit's decision in *Churchill*, confirm that the Settlement provides excellent relief and warrants final approval.[5] First, continued litigation would have presented substantial risks, costs, and delay. *See Churchill*, 361 F.3d at 575 (courts should consider the strength of the plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation, and the risk of maintaining class action status throughout the trial). While Class Counsel remains very confident in the strength of the claims, they are also very familiar with the factual and legal issues presented by cases alleging deceptive price advertising like this one, both on the merits and in terms of class certification. Franzini Decl. ¶21; Preliminary Approval Motion at 18-19 (collecting cases where cases alleging deceptive price advertising have been dismissed at every stage of litigation and have been denied class certification multiple times). And even if Plaintiffs prevailed in certifying a class, continued litigation through summary judgment, trial, and any appeals "would be costly and time consuming, only adding to the benefit to class members of early settlement in this case." *Garcia v. Harborstone Credit Union*, 2023 U.S. Dist. LEXIS 201873, at *17-18 (W.D. Wash. Nov. 9, 2023); *see Harrison v. Harry & David Operations, Inc.*, 2022 US Dist LEXIS 178196, at *3-4 (D. Or. Sept. 29, 2022) ("Here,

---

[5] The Rule 23(e)(2)(C) factors are discussed in greater detail in Plaintiffs' Preliminary Approval Motion. *See* Preliminary Approval Motion at 15-20.

there can be no doubt that 'there remains considerable risk, expense, and delay for both sides prior to the conclusion of this case absent a settlement.'"). Second, the Settlement provides for a simple and streamlined method of distributing relief that ensures all Class Members receive the relief they are due: Class Members will receive their $10 store credits automatically, without any need to take any affirmative steps. *See* §§ II(B). This automatic distribution mechanism takes advantage of the fact that Defendant already possesses information allowing for the credits to be automatically delivered by email. Agreement §III(C)(4); *see* Passarella Decl. Ex. E (mail notice requesting Class Members provide updated email addresses to the Settlement Administrator). Plus, Class Members who submit a claim form indicating that they made purchases subject to a percentage-off sitewide discount can receive their $10 in cash. Agreement §III(C)(3). Third, Class Counsel seeks a fee award of approximately 12.5% of the total Settlement value. Such an award is well below the Ninth Circuit's 25% benchmark and is justified by Counsel's extensive and diligent work on the case. *See generally* Fee Motion (providing Counsel's fee award request and explaining in detail why it is reasonable). Plus, there are no signs of collusion with respect to the fee award. Defendant was free to challenge Counsel's fees and costs request. Agreement §III(E)(1). And there is no "kicker" clause: if the Court awards less than the full amount requested by Class Counsel, unawarded fees will be distributed to Settlement Class Members. Preliminary Approval Motion at 12. Finally, there are no agreements that need to be identified under Rule 23(e)(3).

### 4. Rule 23(e)(2)(D): The Settlement treats Class Members equitably.

Here, the Settlement does not improperly prioritize the Class Representatives. Class Counsel has requested modest incentive awards of $2,500 to compensate each Plaintiff for their service to the Class. *See* Fee Motion at 24. And the requested awards—together amounting to less than 0.1% of the Settlement's total monetary value—are justified in light of Plaintiffs' diligence and dedication to the case. *Id.*; Cohn Decl. ¶8; Moody Decl. ¶8; Zuccaro Decl. ¶8. Plus, because the Settlement is

not contingent on the Court's approval of the incentive awards, no conflict of interest can arise

between the Class Representatives and the rest of the Class. Agreement §III(F)(1); Cohn Decl. ¶9;

Moody Decl. ¶9; Zuccaro Decl. ¶9; *see Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328-29 (C.D. Cal.

2016) ("[B]ecause the parties agree that the Settlement Agreement shall remain in force regardless of

any service awards, the awards here are unlikely to create a conflict of interest between the named

plaintiffs and absent class members.").

 The Settlement also does not improperly favor any one segment of the Class. Class Members

are entitled to the same benefits under the Settlement regardless of whether they belong to the

California Subclass or the Oregon Subclass. And every Class Member will receive the same $10

compensation. *See Steinberg v. Corelogic Credco, LLC*, 2023 U.S. Dist. LEXIS 177325, at \*20-21 (S.D.

Cal. Oct. 2, 2023) (settlement did not grant preferential treatment where "every participating

settlement class member [would] receive equal payments."); *Jacobo*, 2019 U.S. Dist. LEXIS 247426

(finally approving settlement of a case alleging deceptive price advertising that distributed a voucher

of the same amount to each class member who filed a claim); *Khan v. Boohoo.com USA, Inc., et al.*, No.

20-cv-3332-GW-JEMx, Dkt. 199 (C.D. Cal. Dec. 16, 2022) at 1 (finally approving settlement of a

case alleging deceptive price advertising that distributed a flat $10 voucher to each class member)

(tentative order granting final approval of settlement); *id.* at Dkt. 200 (C.D. Cal. Dec. 19, 2022) at 1

(granting final approval based on the tentative). Thus, the Settlement treated Class Members

equitably and this factor weighs in favor of final approval.

### 5. The Class's reaction to the Settlement was overwhelmingly positive.

 "The reaction of class members to a proposed settlement is an important factor in

determining whether a settlement is fair, adequate, and reasonable." *Clemans v. New Werner Co.*, 2013

U.S. Dist. LEXIS 167454, at \*15 (W.D. Wash. Nov. 22, 2013); *see Churchill*, 361 F.3d at 575 (listing

"the reaction of the class members to the proposed settlement" as a factor for courts to consider at

final approval); *Arnett v. Bank of America*, 014 U.S. Dist. LEXIS 130903, at *27 (D. Or. Sept. 18,

2014) ("The extremely positive reaction of the Settlement Class further demonstrates that the

Settlement Agreement is fair and reasonable.").

Here, the reaction of the Class Representatives was very positive. Each of them favor the

Settlement and believe that it is in the best interests of the Class. Cohn Decl. ¶7; Moody Decl. ¶7;

Zuccaro Decl. ¶7; *see Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 13 U.S. Dist. LEXIS 179190, at *63

(C.D. Cal. Dec. 5, 2013) ("Courts afford special weight to the opinions of class representatives

because their views may be important in shaping the agreement and they may have a better

understanding of the case than most members of the class." (internal quotations omitted)).

The reaction of absent Class Members was also overwhelmingly positive. "Courts have

repeatedly recognized that the absence of a large number of objections to a proposed class action

settlement raises a strong presumption that the terms of a proposed class settlement action are

favorable to the class members." *De Leon v. Ricoh USA, Inc.*, 2020 U.S. Dist. LEXIS 56285, at *34

(N.D. Cal. Mar. 31, 2020); *see Lane*, 166 F Supp 3d at 1191 ("The number of class members who

object to a proposed settlement is a factor to be considered when approving a settlement. The

absence of significant numbers of objectors weighs in favor of finding the settlement to be fair,

reasonable and adequate"). Here, out of a Class of almost 1.4 million consumers, not a single person

objected to the Settlement. Passarella Decl. ¶18; *see Bravo v. Gale Triangle, Inc.*, 2017 U.S. Dist. LEXIS

77714, at *36 (C.D. Cal. Feb. 16, 2017) (because there was an "absence of any substantive objections

to the proposed settlement," there was a "strong presumption that the settlement [was] fair," and

this "strongly favor[ed] approval."); *Dennis*, 2013 U.S. Dist. LEXIS 163118 at *10 (this factor

favored final approval where "[o]f a putative class covering hundreds of thousands of purchases …

only 6 objections have been submitted."); *Lo v. Oxnard European Motors, LLC*, 2012 U.S. Dist. LEXIS

73983, at *6 (S.D. Cal. May 29, 2012) ("The lack of objections suggests to the Court that the

settlement class members found the terms of the settlement favorable."). And only six Class Members—representing less than 0.001% of the Settlement Class—requested to be excluded from the Settlement. Passarella Decl. ¶18. Such a response indicates an overwhelmingly positive reaction from the Class. *See Arnett*, 2014 U.S. Dist. LEXIS 130903 at *27 (commending the "extremely positive reaction of the Settlement Class" where, out "of 663,192 Settlement Class Members who received notices," "99 opted-out of the Settlement Class, and only four filed objections."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming approval where the district court found 54 objections out of 376,301 class members represented "a favorable reaction to the settlement among class members"); *Churchill*, 361 F.3d 566 at 577 (affirming approval of settlement where "45 of the approximately 90,000 notified class members objected to the settlement," and 500 opted-out); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding class reaction to be "overwhelming[ly] positive" and "support[ing] settlement" where 4.86% of the class opted out). And this is especially true here because the Settlement provided for a robust and effective notice plan. As explained above, more than 99% of Class Members received direct notice by either email or mail. *See* §III(A) above. As a result, Class Members were well aware of the Settlement and how to opt out or object.

In short, the Class's reaction to the Settlement was overwhelmingly positive. And this weighs heavily in favor of final approval of the Settlement.

* * *

As detailed above, each of the factors considered by courts in evaluating proposed class settlements at final approval confirm that the Settlement reached in this case is fair, reasonable, and adequate.[6] The Court should therefore finally approve the Settlement.

---

[6] Courts also consider "the presence of a governmental participant." *Churchill*, 361 F.3d at 575. Here, this factor is largely "inapplicable and neutral because no government entity participated in the case." *Shrager v. Viasat, Inc.*, 2014 U.S. Dist. LEXIS 200808, at *31 (C.D. Cal. Mar. 10, 2014).

**C.    The notice plan fairly and adequately informed Class Members of the Settlement.**

In preliminarily approving the Settlement, the Court found that the proposed form and content of notice represented the best notice practicable under the circumstances and satisfied the requirements of all applicable law, including the Due Process Clause of the United States Constitution. Preliminary Approval Order at 6. As described above, Kroll implemented the notice plan approved by the Court. *See* §III(A) above. Thus, the notice process fairly and adequately informed Settlement Class Members of the nature of the action and the terms of the Settlement.

**IV.    Conclusion.**

For the foregoing reasons, the Motion should be granted.

Dated: October 11, 2024

Respectfully submitted,
By: */s/ Simon Franzini*

Jonas Jacobson (OSB No. 231106)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Grace Bennett (Cal Bar No. 345948)*
grace@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066

*Attorneys for Plaintiffs*

* Admitted *Pro Hac Vice*